KEVIN N. ANDERSON (00100)
ARTEMIS D. VAMIANAKIS (12703)
FABIAN & CLENDENIN
215 So. State Street, Suite 1200
Salt Lake City, UT 84111-2323
Telephone:  (801) 531-8900
Facsimile:  (801) 596-2814
kanderson@fabianlaw.com
avamianakis@fabianlaw.com

STEVEN M. SCHATZ, *pro hac vice*
DAVID J. BERGER, *pro hac vice*
BRYAN J. KETROSER, *pro hac vice*
NESSIA S. KUSHNER, *pro hac vice*
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:  (650) 493-9300
Facsimile:   (650) 565-5100
sschatz@wsgr.com
dberger@wsgr.com
bketroser@wsgr.com
nkushner@wsgr.com

*Attorneys for Nominal Defendant ZAGG Inc
and Individual Moving Defendants Randall
Hales, Brandon T. O'Brien, Edward D.
Ekstrom and Cheryl A. Larabee*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| IN RE: ZAGG INC. SHAREHOLDER DERIVATIVE ACTION | ) ) ) ) ) ) ) ) ) ) ) ) ) | Master Civil Action No. 2:12-cv-01188-DB (Consolidated with 2:12-cv-01216) **NOMINAL DEFENDANT ZAGG INC AND INDIVIDUAL MOVING DEFENDANTS' MOTION TO DISMISS THE VERIFIED CONSOLIDATED SHAREHOLDER DERIVATIVE COMPLAINT** |
| This document relates to: All Actions | ) ) | Judge: Hon. Dee Benson |

# TABLE OF CONTENTS

**Page**

STATEMENT OF RELIEF SOUGHT AND SPECIFIC GROUNDS FOR MOTION .............. vii

INTRODUCTION AND BACKGROUND .................................................................. vii

STATEMENT OF PERTINENT FACTS ................................................................... ix

ARGUMENT ............................................................................................................ 1

I.     FEDERAL AND STATE LAW SET A HIGH BAR FOR SHAREHOLDERS TRYING TO USURP A BOARD'S AUTHORITY TO INITIATE CORPORATE LITIGATION ........................................................................................... 1

    A.     Demand Futility Must Be Pleaded with Particularity ............................... 1

    B.     The *Aronson* and *Rales* Tests ............................................................... 2

    C.     Pleading Facts Showing a "Substantial Likelihood" of Liability ........................... 3

II.     PLAINTIFFS FAIL TO PLEAD PARTICULARIZED FACTS RAISING A REASONABLE DOUBT AS TO ANY DIRECTOR'S DISINTERESTEDNESS .......... 4

    A.     No Director Faces a Substantial Likelihood of Liability for SEC Filings ............. 5

        1.     Plaintiffs' Scienter Allegations Are Inadequate ........................ 6

        2.     No "Essential Link" as Required for Section 14(a) claim. ........................ 9

        3.     The Securities Order Precludes Plaintiffs' Section 14(a) Claim .............. 10

        4.     The Complaint Does Not Come Close to Pleading Liability for Insufficient Oversight ........................................................... 11

    B.     Plaintiffs Lack Standing to Assert Claims Based on the "Background Allegations," Which Occurred Before Most of the Current Directors Joined the Board in Any Event ............................................................ 12

    C.     Plaintiffs Fail to Satisfy *Aronson* as to the Compensation and Consulting Agreement Claims .............................................................................. 13

    D.     Plaintiffs' Remaining Allegations Fail to Raise a Reasonable Doubt as to Any Director's Disinterestedness .......................................................... 15

III.     PLAINTIFFS FAIL TO PLEAD PARTICULARIZED FACTS RAISING A REASONABLE DOUBT AS TO ANY DIRECTOR'S INDEPENDENCE ................... 17

IV.     THE COMPLAINT FAILS TO STATE A CLAIM ...................................... 21

A.  The Section 14(a) Claims Should Be Dismissed (Count I) .................................. 21

B.  The State Law Claims Should Be Dismissed (Counts II, III & IV) .................... 22

    1.  The Fiduciary Duty Claim Should Be Dismissed (Count II)................... 23

    2.  The Unjust Enrichment Claim Should Be Dismissed (Count III) ........... 24

    3.  The Waste Claim Should Be Dismissed (Count IV) ............................... 25

CONCLUSION.................................................................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Andropolis v. Snyder*,
No. 05-cv-01563-EWN-BNB, 2006 WL 2226189 (D. Colo. Aug. 3, 2006)....................15

*Aronson v. Lewis*, 473 A.2d 805 (Del. 1984)........................................................ *passim*

*Ashcroft v. Iqbal*, 129 S. Ct 1937 (2009) .....................................................................21

*Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*,
845 A.2d 1040 (Del. 2004) ...........................................................3, 5, 18, 19, 20

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .........................................................21

*Benihana of Tokyo, Inc. v. Benihana, Inc.*, 891 A.2d 150 (Del. Ch. 2005) ...................19

*Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) ........................................................ *passim*

*Britton v. Parker*,
No. 06-cv-01797-MSK-KLM, 2009 WL 3158133 (D. Colo. Sept. 23, 2009) ...................9

*Brook v. Acme Steel Co.*, No. 10276, 1989 WL 51674 (Del. Ch. May 11, 1989) ..........................6

*Burkeovitch v. Hertz,* No. 01-CV-1277 (ILG), 2001 WL 984942 (E.D.N.Y. July 24, 2001) .........7

*C.I.S. v. Kann*, 394 N.E.2d 916 (Ill. App. Ct. 1979) .....................................................11

*Cadle v. Hicks*, 272 Fed. Appx. 676 (10th Cir. 2008) ...................................................13

*Carauna v. Saligman*, No. 11135, 1990 WL 212304 (Del. Ch. Dec. 21, 1990)............................17

*City of Philadelphia v. Fleming Cos.*, 264 F.3d 1245 (10th Cir. 2001)...........................8

*Desimone v. Barrows*, 924 A.2d 908 (Del. Ch. 2007)......................................4, 6, 12, 24

*Dominick v. Marcove*, 809 F. Supp. 805 (D. Colo. 1992) ..............................................10

*Epic Enters., Inc. v. Brothers*, 395 F. Supp. 773 (N.D. Okla. 1975) ..............................9

*Fed. Deposit Ins. Corp. v. Paul*, 735 F. Supp. 375 (D. Utah 1990)...............................11

*Gen. Elec. Co. by Levit v. Cathcart*, 980 F.2d 927 (3rd Cir. 1992) ...............................9

*Gorman v. Coognan*, No. 03-173-P-H, 2004 WL 2713095 (D. Me. Nov. 24, 2004)...................10

*Grobow v. Perot*, 539 A.2d 180 (Del. 1988) ....................................................8, 13, 16

*Guttmann v. Huang*, 823 A.2d 492 (Del. Ch. 2003) ........................................................................12

*Haber v. Bell*, 465 A.2d 353 (Del. Ch. 1983) ........................................................................2, 20

*Highland Legacy Ltd. v. Singer*,
    No. Civ. A. 1566-N, 2006 WL 741939 (Del. Ch. Mar. 17, 2006) ..............................13, 18

*In re Accuray, Inc. S'holder Deriv. Litig.*, 757 F. Supp. 2d 919 (N.D. Cal. 2010) ................20, 25

*In re Adolor Corp. Deriv. Litig.*, No. 04-3649, 2009 WL 1325738 (E.D. Pa. May 12, 2009) ......16

*In re Autodesk, Inc. S'holder Deriv. Litig.*,
    No. C 06-7185 PJH, 2008 WL 5234264 (N.D. Cal. Dec. 15, 2008) ...............................15

*In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959 (Del. Ch. 1996) ...................................12, 24

*In re Citigroup Inc. S'holder Deriv. Litig.,* 964 A.2d 106 (Del. Ch. 2009)...........12, 16, 22, 23, 24

*In re Computer Sciences Corp. Deriv. Litig.*,
    No. CV 06-05288 NRP (Ex), 2007 WL 1321715 (C.D. Cal. Mar. 26, 2007) ....................1

*In re Dow Chem. Co. Deriv. Litig.*,
    No. 4349-CC, 2010 Del. Ch. LEXIS 2 (Del. Ch. Jan. 11, 2010) ....................................17

*In re Ferro Corp. Deriv. Litig.*, 511 F.3d 611 (6th Cir. 2008)................................................16, 17

*In re HP Deriv. Litig.*,
    No. 5:10-cv-3608 EJD, 2012 WL 4468423 (N.D. Cal. Sept. 25, 2012).......................5, 13

*In re ICG Commc'ns, Inc. Sec. Litig.*,
    No. 1:00 CV 01864 REB BNB, 2006 WL 416622 (D. Colo. Feb. 7, 2006) .....................6

*In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 808 (Del. Ch. 2005)..........................18

*In re Lear Corp. S'holder Litig.*, 967 A.2d 640 (Del. Ch. 2008)..................................................4

*In re Oracle Corp. Deriv. Litig.*, 824 A.2d 917 (Del. Ch. 2003)................................................20

*In re Safeguard Scientifics*,
    No. Civ. A. 01-3208, 2004 WL 2700291 (E.D. Pa. Nov. 18, 2004)..................................7

*In re Sagent Tech., Inc., Deriv. Litig.*, 278. F. Supp. 2d 1079 (N.D. Cal. 2003) ..........................22

*In re United Telecomms., Inc. Sec. Litig.*,
    No. 90-2251-EEO, 1993 WL 100202 (D. Kan. Mar. 4, 1993) ........................................25

*In re Walt Disney Co. Deriv. Litig.*, 731 A.2d 342 (Del. Ch. 1998) ...........................................18

*In re Walt Disney Co. Deriv. Litig.* 906 A.2d 27 (Del. 2006) ...............................................4, 9, 23

*In re Walt Disney Co. Deriv. Litig.*, 907 A.2d 693 (Del. Ch. 2005)..............................................3

*Jacobs v. Yang*, No. Civ. A. 206-N, 2004 WL 1728521 (Del. Ch. Aug. 2, 2004) .........................19

*Jacobs v. Yang*, 867 A.2d 902 (Del. 2005) ...............................................................................19

*Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90 (1991)...............................................................1

*Kaplan v. Wyatt*, 499 A.2d 1184 (Del. 1985) .............................................................................5

*Kennedy v. Carriage Cemetery Servs.*, 727 F. Supp. 2d 925 (D. Nev. 2010) .............................24

*Lewis v. Vogelstein*, 699 A.2d 327 (Del. Ch. 1997).....................................................................14

*MACTEC, Inc. v. Gorelick*, 427 F.3d 821 (10th Cir. 2005).........................................................10

*Nev. Indus. Dev. v. Benedetti*, 741 P.2d 802 (Nev. 1987)............................................................24

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Raines*,
    534 F.3d 779 (D.C. Cir. 2008)...............................................................................................14

*Protas v. Cavanagh*, No. 655-VCG, 2012 WL 1580969 (Del. Ch. May 4, 2012) .................14, 15

*Rales v. Blasband*, 634 A.2d 927 (Del. 1993) ...............................................................2, 3, 5, 8, 19

*Ross v. Bernhard*, 396 U.S. 531 (1970) .....................................................................................11

*Seminaris v. Landa*, 662 A.2d 1350 (Del. Ch. 1995)....................................................................3

*Sherman v. Ryan*, 911 N.E.2d 378 (Ill. App. Ct. 2009) ..............................................................24

*Shoen v. SAC Holding Corp.*, 137 P.3d 1171 (Nev. 2006)........................................................1, 2

*Sosa v. DIRECTV, Inc.*, 437 F.3d 923 (9th Cir. 2006).................................................................11

*Steed v. Warrior Capital, L.L.C.*,
    No. CIV-06-348-F, 2007 WL 2458790 (W.D. Okla. Aug. 24, 2007) ...............................22

*Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362 (Del. 2006) ...........................2, 3

*Turner v. MagicJack VocalTec, Ltd.*,
    No. 13 Civ. 0448, 2014 WL 406917 (S.D.N.Y. Feb. 3, 2014) ...........................................7

*Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991) ...........................................................10

*Vess v. Ciba-Giegy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ..................................................22

*White v. Panic*, 793 A.2d 356 (Del. Ch. 2000) ...........................................................................16

*White v. Panic*, 783 A.2d 543 (Del. 2001)..................................................................................16

*Wood v. Baum*, 953 A.2d 136 (Del. 2008).......................................................................... *passim*

*Yapp v. Excel Corp.*, 186 F.3d 1222 (10th Cir. 1999) ....................................................10

*Zucker v. Andreessen,*
    No. 6014-VCP, 2012 WL 2366448 (Del. Ch. June 21, 2012) ...........................................14

## STATUTES

8 Del. C. § 102(b)(7) ...................................................................................................23

15 U.S.C. § 78p(a)(1) .....................................................................................................7

Nev. Rev. Stat. § 78.120(1) ...........................................................................................1

Nev. Rev. Stat. § 78.138(7)(b) ...........................................................................3, 5, 22, 23

## RULES

Fed. R. Civ. P. 8 ................................................................................................... vii, 22

Fed. R. Civ. P. 9(b) .............................................................................................. vii, 22

Fed. R. Civ. P. 12(b)(6) ............................................................................................. vii

Fed. R. Civ. P. 23.1 ......................................................................................... vii, 1, 13

Fed. R. Civ. P. 41(b) ...................................................................................................10

## OTHER MATERIALS

RESTATEMENT (SECOND) OF JUDGMENTS § 87 (1982) ..................................................10

**STATEMENT OF RELIEF SOUGHT AND SPECIFIC GROUNDS FOR MOTION**

Pursuant to Rules 23.1, 12(b)(6), 9(b) and 8 of the Federal Rules of Civil Procedure and applicable state law, Nominal Defendant ZAGG Inc ("ZAGG" or the "Company") and individual defendants Randall Hales, Brandon T. O'Brien, Edward D. Ekstrom, and Cheryl A. Larabee (the "Individual Moving Defendants") move for an order dismissing the Verified Consolidated Shareholder Derivative Complaint, *In re ZAGG Inc. S'holder Deriv. Action*, No. 2:12-cv-01188-DB (D. Utah June 5, 2013), ECF No. 43 (the "Complaint" or "¶") in its entirety and with prejudice, for lack of standing and for failure to state a claim upon which relief can be granted. As set forth below, the Complaint fails to plead particularized facts sufficient to excuse demand and, in any event, fails to state a claim against any Individual Moving Defendant under either Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act") or state law.

**INTRODUCTION AND BACKGROUND**

Plaintiffs purport to bring this derivative action on behalf of ZAGG. Plaintiffs allege that certain ZAGG officers and directors are liable for causing the Company to issue statements that were misleading because they omitted: (1) the CEO's margin account and (2) a supposed "secret succession plan." The Complaint asserts a Section 14(a) claim as well as the usual assortment of state law claims typically asserted in a tag-along derivative suit such as this.

The ZAGG Board of Directors is responsible for conducting ZAGG's business, including deciding whether to bring litigation on its behalf. Because Plaintiffs chose not to make a demand on the Board that it pursue litigation itself, they must plead <u>particularized facts</u> demonstrating that such a demand would have been "futile" because at least half of the

directors on ZAGG's six-member Board lack either disinterestedness or independence.  The Complaint fails to do so, and indeed, does not even challenge the disinterestedness or independence of three of the six directors, who are not named as defendants in this action.

As to the other three, Plaintiffs argue – as derivative plaintiffs often do – that demand would have been futile because they lack disinterestedness due to a "substantial likelihood of liability" for the alleged misconduct.   But because ZAGG's articles of incorporation and applicable law exculpate the Company's directors for claims of negligence, Plaintiffs cannot demonstrate a "substantial likelihood of liability" absent particularized facts demonstrating bad faith.  Plaintiffs' conclusory allegations do not show that any director had knowledge of Mr. Pedersen's margin account at the relevant times, let alone that they knew it had to be disclosed.

Most of Plaintiffs' remaining demand futility allegations are boilerplate.  Courts routinely reject conclusory allegations that directors served on committees, received compensation for their work, or signed challenged SEC filings as insufficient to excuse demand.  Nor do Plaintiffs' "Background Allegations" regarding the "ZAGGBox" and "HzO" transactions – which concern events that occurred before the "Relevant Period" and before Ms. Larabee joined the ZAGG Board – change the equation.  Indeed, the allegations against Ms. Larabee on the whole are particularly weak.  Because Ms. Larabee and the three non-defendant directors formed a majority of ZAGG's six-person Board when this action was filed, the Court need not analyze the disinterestedness or independence of the remaining two directors.  Even as to the remaining two directors, however, the Complaint falls short.

In fact, since the Complaint borrows liberally from the related Securities Action (defined herein), Plaintiffs' pleading failure is underscored by this Court's recent dismissal of

that action.  *See* Memorandum Decision and Order, *In re ZAGG Inc. Securities Litigation*, No. 2:12-cv-00852-DB (D. Utah Feb. 7, 2014), ECF No. 75 ("Securities Order").  The Securities Order bars Plaintiffs' proxy claim, but that claim would fail regardless for lack of an "essential link."

Because Plaintiffs fail adequately to plead demand futility, they may not sue on behalf of ZAGG.  Yet even if that were not the case, Plaintiffs' failure to state a valid claim for relief is equally fatal to their Complaint.

Accordingly, and as set forth in more detail below, the Complaint should be dismissed.

## STATEMENT OF PERTINENT FACTS

1.      **The Parties**.  ZAGG is a Nevada corporation with its principal executive offices in Salt Lake City, Utah.  ZAGG designs, manufactures and distributes protective coverings, audio accessories and power solutions for electronic and hand-held devices.  ¶¶ 2, 22.

2.      Defendant Robert G. Pedersen was the co-founder of ZAGG and its Chief Executive Officer and Chairman of the Board of Directors until August 2012.  ¶ 23.

3.      The other defendants are Randall Hales, Brandon T. O'Brien, Edward D. Ekstrom, Cheryl A. Larabee (collectively with Messrs. Hales, O'Brien, and Ekstrom, the "Individual Moving Defendants"), and Shuichiro Ueyama.  ¶¶ 24-28.

4.      Mr. O'Brien has served as the Chief Financial Officer of ZAGG since February 12, 2007.  ¶ 25.  Ms. Larabee has served as a ZAGG director since March 9, 2011.  ¶ 26.  Mr. Ekstrom served as a ZAGG director from 2009 through April 27, 2013.  ¶ 27.

5.      **Mr. Hales' Appointment as President and COO**.  On December 12, 2011, the Company announced the appointment of Mr. Hales as ZAGG's President and Chief Operating

Officer ("COO").  ¶ 82.[1]  The December 12, 2011 press release stated that Mr. Hales had "become familiar with the day-to-day operations of ZAGG," and described his new role as "overseeing operations and customer service at ZAGG."  *Id.*; Ex. 1.[2]

6.      During the next earnings conference call, Mr. Pedersen described Mr. Hales' role as "help[ing] to manage the overall day-to-day operations of ZAGG."  ¶¶ 6, 84; Ex. 2.

7.      **Mr. Pedersen's December 2011 stock sales**.  On December 21, 2011, Mr. Pedersen sold 345,200 shares of ZAGG common stock as a result of a margin call.  ¶ 5; Ex. 5.

8.      Mr. Pedersen filed a Form 4 on December 23, 2011, disclosing his December 21, 2011 sales.  The Form 4 stated that the sales were made to meet an "immediate financial obligation."  ¶¶ 74-75; Ex. 5.

9.      **The 2011 Form 10-K.**  On March 15, 2012, the Company filed its FY11 Form 10-K.  ¶ 99.

10.      **The 2012 Proxy Statement.**  On April 27, 2012, the Company filed a proxy statement soliciting votes for, *inter alia*, the re-election of the Company's five directors, including Mr. Pedersen.  The 2012 Proxy did not address whether any of Mr. Pedersen's shares were pledged as security.  ¶¶ 8, 89, 100.

11.      **Mr. Pedersen's August 2012 Stock Sales**.  On August 14, 2012 and August 24, 2012, Mr. Pedersen sold 515,000 and 1,250,061 shares, respectively, as a result of margin

---

[1] Mr. Hales has also served as a ZAGG director since October 2010.  ¶ 24.

[2] Exhibits ("Ex. __") are attached to the Declaration of Nessia S. Kushner in Support of Nominal Defendant ZAGG Inc and Individual Moving Defendants' Motion to Dismiss the Verified Consolidated Shareholder Derivative Complaint, filed concurrently herewith.

calls.  ¶¶ 11, 76, 117.

12.     Mr. Pedersen filed Forms 4 disclosing these sales and the fact that they were "to meet margin calls."  ¶ 76.  Mr. Pedersen's August 28, 2012 Form 4 stated that the August 24 sales "satisf[ied] all margin obligations."  ¶ 76; Ex. 6.

13.     **Mr. Pedersen's Resignation**.  After selling his stock to meet margin calls, on August 17, 2012, Mr. Pedersen was forced to resign as CEO of ZAGG and Chairman of the ZAGG Board.  ¶¶ 11, 23, 85, 110.   The Company entered into a consulting agreement with Mr. Pedersen, pursuant to which Mr. Pedersen received $910,000.  In return, Mr. Pedersen agreed to provide "services related to current and historical finances and operations; relationships with suppliers, customers, and vendors; product development; marketing and distribution; representation of the Registrant at public appearances; and participation in the Registrant's meetings as an independent contractor on projects and matters as requested by the Chairperson of the Board of the Registrant."  Ex. 8 at 3.

14.     Also on August 17, 2012, Mr. Hales was appointed interim CEO.  ¶ 24.  The Company held a conference call on August 28, 2012, during which Mr. Hales explained that Mr. Pedersen's departure was due to the margin call situation.  ¶¶ 13, 86, 120.  The Company also implemented a policy preventing officers, directors and 10% shareholders from holding securities in margin accounts or engaging in hedging or other similar transactions using shares of the Company.  ¶¶ 47, 112; Ex. 7.

15.     Nearly four months later, on December 10, 2012, Mr. Hales was appointed CEO.  ¶ 24.

16.     **Procedural History.**  On December 19, 2012, Plaintiff Albert Pikk filed a

derivative complaint for breach of fiduciary duty, unjust enrichment and waste of corporate assets.  Verified Shareholder Derivative Complaint, *Pikk v. Pederson, et al.*, No. 2:12-cv-01188-DB (D. Utah Dec. 19, 2012), ECF No. 2.  When that complaint was filed, the ZAGG board consisted of six individuals: Todd Heiner, Brad Holiday, Dan Maurer, Mr. Hales, Mr. Ekstrom, and Ms. Larabee (collectively, the "ZAGG Board" or "Board").  ¶ 139.

17.     On December 28, 2012, Plaintiff Daniel L. Rosenberg filed his derivative complaint for violations of the federal securities laws, breach of fiduciary duty, unjust enrichment and insider trading.  *See* Verified Derivative Complaint, *Rosenberg v. Pedersen, et. al.*, No. 2:12-cv-01216-EJF (D. Utah Dec. 28, 2012), ECF No. 2.  On February 27, 2013, the Court consolidated the *Pikk* and *Rosenberg* actions into this *In re ZAGG Inc. Shareholder Derivative Action*.  Order Granting Stipulated Motion for Order Consolidating Related Actions and Appointing Co-Lead Counsel and Liaison Counsel, *Pikk v. Pederson, et al.*, No. 2:12-cv-01188-DB (D. Utah Feb. 27, 2013), ECF No. 30.

18.     On March 15, 2013, the Court issued an order staying Defendants' obligation to respond to the then-anticipated consolidated complaint pending the resolution of a motion to dismiss in a related securities class action, *In re ZAGG Inc. Securities Litigation*, No. 2:12-cv-00852-DB (D. Utah) (the "Securities Action").  Order Granting Stipulated Motion for Order Regarding Case Management, *In re ZAGG Inc. S'holder Deriv. Action*, No. 2:12-cv-01188-DB (D. Utah March 15, 2013), ECF No. 36.  The Securities Action alleged violations of Sections 10(b), 14(a) and 20(a) of the Exchange Act and was based on the same alleged failures to disclose Mr. Pedersen's margin account and a supposed "secret succession plan" that underlie this action.  *See* Consolidated Class Action Complaint for Violations of the Federal Securities

Laws, *In re ZAGG Inc. Securities Litigation*, No. 2:12-cv-00852-DB (D. Utah May 6, 2013), ECF No. 52 (the "Securities Action Complaint").  Plaintiffs filed the instant Complaint on June 5, 2013.

19.     On February 7, 2014, the Court entered the Securities Order, dismissing all claims in the Securities Action, including the Section 14(a) claim.  The Court entered final judgment on February 20, 2014.  Judgment, *In re ZAGG Inc. Securities Litigation*, No. 2:12-cv-00852-DB (D. Utah Feb. 20, 2014), ECF No. 76.  The Securities Action is now on appeal.

## ARGUMENT

### I.  FEDERAL AND STATE LAW SET A HIGH BAR FOR SHAREHOLDERS TRYING TO USURP A BOARD'S AUTHORITY TO INITIATE CORPORATE LITIGATION

#### A.  Demand Futility Must Be Pleaded with Particularity

A fundamental policy underlying Nevada corporate law is that "a corporation's 'board of directors has full control over the affairs of the corporation.'"  *Shoen v. SAC Holding Corp.*, 137 P.3d 1171, 1178 (Nev. 2006) (quoting Nev. Rev. Stat. § 78.120(1)).  This includes the power to decide whether the company should engage in litigation.  *Shoen*, 137 P.3d at 1179.  Derivative actions, in which shareholders purport to bring suit in the name of a company, provide an unusual and narrow exception to this rule.  *See Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).[3]

Shareholders seeking to enforce a corporation's rights must first demand action from the board of directors or plead with particularity the reasons why such a demand would have been futile.  *Aronson*, 473 A.2d at 808; *see also* Fed. R. Civ. P. 23.1 (demand futility must be pleaded "with particularity").  The demand requirement is "a rule of substantive right designed to give a corporation the opportunity to rectify an alleged wrong without litigation, and to control any litigation which does arise."  *Aronson,* 473 A.2d at 809.  The purpose of the

---

[3] Because ZAGG is a Nevada corporation, Nevada's substantive law governs the demand analysis required in derivative cases like this one.  *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108-09 (1991).  However, "Nevada courts look to Delaware law for guidance on issues of corporate law."  *In re Computer Sciences Corp. Deriv. Litig.*, No. CV 06-05288 NRP (Ex), 2007 WL 1321715, at *4 (C.D. Cal. Mar. 26, 2007).  In fact, the Nevada Supreme Court has adopted the standards articulated by the courts of Delaware concerning the circumstances under which demand is excused.  *See Shoen*, 137 P.3d at 1184.

requirement is to ensure "that a stockholder exhausts his intracorporate remedies, and then to provide a safeguard against strike suits." *Id.* at 811-12.

Plaintiffs concede that they "did not make a demand on the Board to bring this action[.]" ¶ 138. Thus, before they can "represent the interests of the Company" (¶ 136), they must "'allege with particularity . . . the reasons for [their] failure to obtain the action or for not making the effort.'" *Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 367 & n.9 (Del. 2006) (citation omitted).[4] If a complaint fails to allege particularized facts sufficient to excuse demand, then it must be dismissed "even if [the plaintiff] has an otherwise meritorious claim." *Haber v. Bell*, 465 A.2d 353, 357 (Del. Ch. 1983); *see also Shoen*, 137 P.3d at 1180.

### B.   The *Aronson* and *Rales* Tests

If a plaintiff challenges an affirmative board decision, then under *Aronson*, demand is excused only if the plaintiff pleads particularized facts creating a reasonable doubt that (1) a majority of the directors is disinterested and independent, or (2) the transaction was the product of a valid exercise of business judgment. *Aronson*, 473 A.2d at 814. If a plaintiff challenges something other than a board action – such as a failure to act or actions by individual directors – then the second part of the *Aronson* test drops out and, under *Rales*, the test becomes whether the plaintiff pleads particularized facts that "create a reasonable doubt that . . . the board . . . could have properly exercised its independent and disinterested business judgment in responding to a demand." *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993). Because the only claims in the Complaint addressing affirmative decisions by the ZAGG Board are the ones

---

[4] *See also Wood v. Baum*, 953 A.2d 136, 140 & n.10 (Del. 2008) ("plaintiff must 'comply with stringent requirements of factual particularity'") (citation omitted).

challenging compensation decisions (including Mr. Pedersen's consulting agreement), *Aronson* applies to those claims, and *Rales* applies to the rest.

Disinterestedness and independence are presumed at the pleading stage. *See Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1048-50 (Del. 2004). To plead a disqualifying interest, a plaintiff must offer particularized facts demonstrating that a director "will receive a personal financial benefit from a transaction that is not equally shared by the stockholders," or that "a corporate decision will have a materially detrimental impact on a director, but not the corporation and the stockholders." *Rales*, 634 A.2d at 936. To plead a lack of independence, a plaintiff must "show that the directors are 'beholden' to [an interested director] or so under their influence that their discretion would be sterilized." *Id.*

### C.    Pleading Facts Showing a "Substantial Likelihood" of Liability

The "mere threat" of liability is insufficient to raise a reasonable doubt as to a director's disinterestedness. *Aronson*, 473 A.2d at 815. Rather, a plaintiff must show "such egregious conduct . . . that they face a substantial likelihood of liability." *Seminaris v. Landa*, 662 A.2d 1350, 1355 (Del. Ch. 1995). The standard to state a cause of action for breach of fiduciary duty is gross negligence. *See, e.g.*, *Stone*, 911 A.2d at 369. "[O]rdinary negligence is insufficient[.]" *In re Walt Disney Co. Deriv. Litig.*, 907 A.2d 693, 760 (Del. Ch. 2005).

The burden is even higher where, as here, the corporation has adopted an "exculpatory provision" in its articles of incorporation.[5] ZAGG's articles of incorporation provide: "To the

---

[5] *See* Nev. Rev. Stat. § 78.138(7)(b) ("Except as otherwise provided . . . or unless the articles of incorporation . . . provide for greater individual liability, a director or officer is not individually liable to the corporation . . . for any damages as a result of any act or failure to act

(continued...)

fullest extent permitted by the laws of the State of Nevada . . . no director or officer of the Corporation shall be liable to the Corporation or to its stockholders for damages for breach of fiduciary duty as a director or officer." Ex. 3 at 48.   In light of this provision, "plaintiffs cannot sustain their complaint even by pleading facts supporting an inference of gross negligence; they must plead a non-exculpated claim." *In re Lear Corp. S'holder Litig.*, 967 A.2d 640, 648 (Del. Ch. 2008) (citation omitted).  Thus, Plaintiffs must plead particularized facts which show "an actual intent to do harm" or "conscious disregard for [the Individual Moving Defendants'] responsibilities." *In re Walt Disney Co. Deriv. Litig.* 906 A.2d 27, 62-64 (Del. 2006).  In other words, just like in the Securities Action, Plaintiffs are required to plead "particularized facts that demonstrate that the [Individual Moving Defendants] acted with scienter." *Wood*, 953 A.2d at 141.

## II.   PLAINTIFFS FAIL TO PLEAD PARTICULARIZED FACTS RAISING A REASONABLE DOUBT AS TO ANY DIRECTOR'S DISINTERESTEDNESS

At the time this lawsuit was filed, the Board consisted of six directors.[6]  Thus, Plaintiffs must plead particularized facts raising a reasonable doubt as to the disinterestedness or

---

(...continued from previous page)
in his or her capacity as a director or officer unless it is proven that . . . [t]he breach of those duties involved intentional misconduct, fraud or a knowing violation of law.").

[6] The six were:  Todd Heiner, Brad Holiday, Dan Maurer, Mr. Ekstrom, Mr. Hales and Ms. Larabee.  As the Complaint contains no allegations as to the disinterestedness or independence of Messrs. Heiner, Holiday, or Maurer, there is no dispute that they could have considered a demand impartially.  *See Desimone v. Barrows*, 924 A.2d 908, 943 (Del. Ch. 2007) ("[A] derivative complaint must plead facts *specific to each director*[.]").

independence of at least three of the six Board members.[7]  Plaintiffs only challenge the

impartiality of three directors:  Ms. Larabee, Mr. Ekstrom and Mr. Hales.  Because the

allegations are clearly inadequate as to Ms. Larabee – an outside director who joined the ZAGG

Board after the events alleged in the "Background Allegations" and who is not alleged to have

had prior business ties with Mr. Pedersen – the Court need go no further.  In any event, as

demonstrated below, the Complaint fails to mount a sufficient challenge to any of the directors.

### A.  No Director Faces a Substantial Likelihood of Liability for SEC Filings

Plaintiffs' primary demand futility argument is that Ms. Larabee, Mr. Ekstrom and Mr.

Hales face a substantial likelihood of liability because they "reviewed, approved, and signed"

the Company's March 15, 2012 Form 10-K and the April 27, 2012 Proxy.  ¶ 154.[8]  But

"execution of . . . financial reports, without more, is insufficient to create an inference that the

directors had actual or constructive notice of any illegality."  *Wood*, 953 A.2d at 142; *see also*

*Kaplan v. Wyatt*, 499 A.2d 1184, 1189 (Del. 1985) ("The mere fact that a director was on the

Board at the time of the acts alleged in the complaint does not make that director interested or

dependent[.]").   Rather, Plaintiffs must plead particularized facts demonstrating "intentional

misconduct, fraud or a knowing violation of law."   Nev. Rev. Stat. § 78.138(7)(b) (emphasis

added).  Plaintiffs' catalog of conclusory and generic allegations does not provide the requisite

---

[7] Where the board consists of an even number of directors, a plaintiff must raise a
reasonable doubt as to at least half of the directors.  *See, e.g.*, *Beam*, 845 A.2d at 1046 & n.8.

[8] Such allegations are analyzed under *Rales*.  *See, e.g.*, *In re HP Deriv. Litig.*, No. 5:10-cv-
3608 EJD, 2012 WL 4468423, at *12 (N.D. Cal. Sept. 25, 2012) ("Because the [alleged]
misrepresentation in the proxy statement does not constitute a business decision by the board,
the court applies . . . the *Rales* test rather than the *Aronson* test.").

particularized facts showing knowledge of both the status of Mr. Pedersen's pledges at the relevant times and the requirement to disclose the alleged omission.

This is not the first time the Court has been asked to analyze allegations that the ZAGG directors signed intentionally-misleading SEC filings.  The Securities Action plaintiffs asserted that Ms. Larabee, Mr. Ekstrom and Mr. Hales – the three directors alleged here to face a "substantial likelihood of liability" – were liable under Sections 10(b) and 14(a) of the Exchange Act for signing the Company's March 15, 2012 Form 10-K and its April 27, 2012 Proxy.  Securities Action Complaint ¶¶ 1, 8, 57-58.  The Court disagreed.  *See* Securities Order.

### 1.    Plaintiffs' Scienter Allegations Are Inadequate

**No knowledge of margin account at relevant time.**  Plaintiffs provide <u>no</u> particularized facts to demonstrate that Ms. Larabee, Mr. Ekstrom or Mr. Hales knew about – let alone intentionally failed to disclose − Mr. Pedersen's margin account when they signed the SEC filings in question.  Instead, Plaintiffs rely on conclusory assertions.  *See, e.g.*, ¶ 92 ("Despite actual knowledge of Defendant Pedersen's pledges . . . ."), ¶ 94 ("Although the Board had knowledge of Pedersen's stock pledges . . . .").  Such conclusory assertions, without facts indicating <u>how</u> and <u>when</u> each director gained knowledge of the status of Mr. Pedersen's margin account, are not sufficient.  *See, e.g., Desimone*, 924 A.2d at 943; *Brook v. Acme Steel Co.*, No. 10276, 1989 WL 51674, at *3 (Del. Ch. May 11, 1989); *see also* Section I, *supra*.  Just because the Individual Moving Defendants knew that Mr. Pedersen had a margin call in December 2011 does not mean that they knew he had still more ZAGG shares in a margin account <u>more than four months later</u>, when the 2012 Proxy was filed.  *See, e.g., In re ICG Commc'ns, Inc. Sec. Litig.*, No. 1:00 CV 01864 REB BNB, 2006 WL 416622, at *12 (D. Colo.

Feb. 7, 2006) ("[P]laintiffs do not allege that Bryan was aware that the kind of problems

described in the July, 1999, meeting continued through [2Q00].").

        As the Court wrote in dismissing the Securities Action:

> There are no allegations of any memoranda, e-mails, or other written
> documentation to suggest that the Moving Defendants knew about the stock
> pledging prior to each margin call.  There are no allegations as to any statement
> made by any Moving Defendant that could suggest that such Defendant knew
> about the stock pledging.  The allegations are simply insufficient to suggest that
> the Moving Defendants knew about the stock pledging prior to each margin call.

Securities Order at 11.  Like the Securities Action, the Complaint alleges no contemporaneous

documentation or other evidence indicating knowledge at the relevant times.[9]

        **No knowledge that omission of margin account rendered filings misleading.**  In

addition to showing the Individual Moving Defendants knew the status of Mr. Petersen's

margin account, Plaintiffs also must plead particularized facts showing they knew its omission

from the 2012 Proxy would mislead investors.  *See, e.g.*, *Wood*, 953 A.2d at 142 ("[T]he

Complaint alleges many violations of federal securities and tax laws but does not plead with

particularity . . . defendants knew that such conduct was illegal.").[10]  The Complaint does not.

---

[9] Moreover, while Item 403(b) applies to the Proxy and Form 10-K, it does not apply to the other statements (¶¶ 98, 101-08, 155) that Plaintiffs challenge.  *See, e.g.*, *Turner v. MagicJack VocalTec, Ltd.*, No. 13 Civ. 0448, 2014 WL 406917, at *6 (S.D.N.Y. Feb. 3, 2014) ("Regulation S-K Item 403, which governs disclosure of stock pledges, applies only to Form 10-K, not to Form 10-Q.").  Nor was there otherwise a duty to disclose Mr. Pedersen's pledges. *See, e.g.*, *In re Safeguard Scientifics*, No. Civ. A. 01-3208, 2004 WL 2700291, at *2 (E.D. Pa. Nov. 18, 2004); *Burkeovitch v. Hertz*, No. 01-CV-1277 (ILG), 2001 WL 984942, at *9 (E.D.N.Y. July 24, 2001).  And, to the extent Plaintiffs assert a claim against the Individual Moving Defendants based on Mr. Pedersen's December 23, 2011 Form 4 (¶¶ 5, 75), that filing was Mr. Pedersen's sole responsibility.  *See* 15 U.S.C. § 78p(a)(1).

[10] The rule is the same in the analogous securities fraud context, where plaintiffs must demonstrate that defendants "knew that failure to reveal the potentially material fact would

(continued...)

**Insufficient showing of "secret succession plan."**   Plaintiffs also allege liability for omission of a "secret succession plan." *See, e.g.*, ¶¶ 6-7, 152.[11]  But, the Complaint fails to allege the existence – much less knowledge – of such a plan. *See, e.g.*, *Grobow v. Perot*, 539 A.2d 180, 187 (Del. 1988) (assertions "not supported by allegations of specific fact may not be taken as true"), *overruled in part on other grounds by Brehm*, 746 A.2d 244.

As this Court has already determined, Plaintiffs' theory rests on a tripod with three faulty legs.  They argue:  1) Mr. Hales was hired, on December 12, 2011, to run the "day-to-day operations of ZAGG" (¶ 82); 2) Mr. Hales became interim CEO when Mr. Pedersen resigned (¶ 111); and 3) Mr. Hales stated, on August 28, 2012, that "Pedersen's departure 'was entirely related to the margin call situation'" (¶ 86).  But there could not have been a "secret succession plan" to replace Mr. Pedersen spawned by Mr. Pedersen's margin call if Mr. Hales was hired nine days <u>before</u> Mr. Pedersen's December 21, 2011 margin call.  *Compare* ¶ 82 (Mr. Hales hired on December 12, 2011) *with*  ¶ 5 (Mr. Pedersen's first forced sale occurred on December 21, 2011).  The Complaint portrays Mr. Hales' running of the "day to day operations" of ZAGG as some sort of August 2012 surprise (¶ 120), but not only were these responsibilities disclosed in both the December 12, 2011 press release (¶ 82; Ex. 1) and the February 27, 2012 earnings call (¶¶ 6, 84; Ex. 2 at 2), they are precisely the responsibilities one would expect for a Chief <u>Operating</u> Officer.  And the mere fact that Mr. Hales succeeded Mr.

---

(...continued from previous page)
likely mislead investors."  *City of Philadelphia v. Fleming Cos.*, 264 F.3d 1245, 1261 (10th Cir. 2001); *see also* Securities Order at 10.

[11] This claim is analyzed under *Rales*.  *See* Section I.B, *supra*.

Pedersen does not mean there was a pre-existing plan that he would do so.

*     *     *

To show a "substantial likelihood of liability," Plaintiffs must plead particularized facts demonstrating that the directors acted with "an actual intent to do harm" or "conscious disregard for [their] responsibilities" – i.e., scienter – in signing the SEC filings at issue. *Walt Disney*, 906 A.2d at 62-64; *see also Wood*, 953 A.2d at 141.  They fail to do so.

### 2.     No "Essential Link" as Required for Section 14(a) claim.

Plaintiffs cannot demonstrate a substantial likelihood of liability for a proxy violation because they fail to plead an "essential link."[12]  There can be no recovery under Section 14(a) unless "the transaction described in the allegedly misleading Proxy Statement . . . resulted in a loss to the Plaintiff." *Britton*, 2009 WL 3158133, at *11.  In fact, the transaction must be "the direct cause of the pecuniary injury[.]"  *Gen. Elec. Co. by Levit v. Cathcart*, 980 F.2d 927, 933 (3rd Cir. 1992).

Plaintiffs assert a purported injury to the Company due to Mr. Pedersen's "reckless pledging" (*see* ¶¶ 3, 5-6, 74), not his re-election as a director.  Thus, the Complaint fails to allege any harm to ZAGG, "direct" or otherwise, as a result of the 2012 Proxy.  *See, e.g.*, *Epic Enters., Inc. v. Brothers*, 395 F. Supp. 773, 776 (N.D. Okla. 1975) ("The proxy solicitation was not a link in the accomplishment of either the (1) alleged overexpenditures or (2) the alleged

---

[12] In order to impose Section 14(a) liability, Plaintiffs "must sufficiently plead that each Defendant: (i) misrepresented or omitted a material fact in the . . . Proxy Statements; (ii) that they did so at least negligently; and (iii) the misrepresentation or omission was 'an essential link in causing the corporate transaction in question.'"  *Britton v. Parker*, No. 06-cv-01797-MSK-KLM, 2009 WL 3158133, at *6 (D. Colo. Sept. 23, 2009) (citation omitted).

illegal loan [from company to officer]."). The Court, in the Securities Action, rejected an identical Section 14(a) claim for this same reason. *See* Securities Order at 14.

The Complaint also fails to show an "essential link" because Plaintiffs' votes were not "legally required to authorize the action proposed." *Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1102 (1991). ZAGG determines director elections by plurality vote. *See* Ex. 4 at 7 ("the five nominees with the most votes will be elected as directors of the Company"). Because only five individuals were nominated in 2012 (Mr. Pedersen, Mr. Ekstrom, Mr. Hales, Ms. Larabee and Mr. Ueyama), Mr. Pedersen's own, large shareholdings (approximately 18.9% (¶ 4)) guaranteed his re-election to the Board. The "essential link" requirement is not met under such circumstances. *See, e.g.*, *Dominick v. Marcove*, 809 F. Supp. 805, 808 (D. Colo. 1992); *Gorman v. Coognan*, No. 03-173-P-H, 2004 WL 2713095, at *20 (D. Me. Nov. 24, 2004).

### 3.      The Securities Order Precludes Plaintiffs' Section 14(a) Claim

The Section 14(a) claim fails for yet another reason:  the Securities Order. "[R]es judicata, or claim preclusion, will prevent a party from re-litigating a legal claim that was or could have been the subject of a previously issued final judgment." *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005) (citation omitted).[13]  Claim preclusion has three elements: "(1) a final judgment on the merits in an earlier action; (2) identity of the parties in the two suits; and (3) identity of the cause of action in both suits." *Id.*  Each element is met here.

First, the Securities Order was a judgment on the merits. *See* Fed. R. Civ. P. 41(b)

---

[13] Federal law governs the preclusive effect of the Securities Order because "[f]ederal law determines the effects under the rules of res judicata of a judgment of a federal court[.]" Restatement (Second) of Judgments § 87 (1982); *see also Yapp v. Excel Corp.*, 186 F.3d 1222, 1226 (10th Cir. 1999).

("[A]ny dismissal not under this rule – except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19 – operates as an adjudication on the merits.").[14]  In "federal courts, a district court judgment is 'final' for purposes of res judicata" notwithstanding a pending appeal.  *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 928 (9th Cir. 2006).  Second, ZAGG and the Individual Moving Defendants were parties to the Securities Action.[15]  Third, the claims are identical.  Both the Securities Action and the Complaint assert that the Individual Moving Defendants violated Section 14(a) by signing the 2012 Proxy, which allegedly was misleading due to the omission of Mr. Pedersen's pledges and a "secret succession plan."

Plaintiffs' Section 14(a) claim is thus legally barred by the Securities Order.  But, even if it were not barred, the reasoning therein applies equally here.  The Section 14(a) claim cannot support a "substantial likelihood of liability" as to any of the ZAGG directors.

> **4.    The Complaint Does Not Come Close to Pleading Liability for Insufficient Oversight**

Plaintiffs allege a failure "to disclose that the Company did not maintain adequate internal controls over financial reporting," referring to ZAGG's statement that, as of December 31, 2010, the Company lacked "a sufficient number of accounting professionals with the

---

[14] *See also Fed. Deposit Ins. Corp. v. Paul*, 735 F. Supp. 375, 380 (D. Utah 1990) ("A motion to dismiss for failure to state a claim upon which relief can be granted . . . [is a] dismissal . . . on the merits and is accorded res judicata effect.") (citation omitted).

[15] In a derivative action, "the stockholder [is] at best the nominal plaintiff."  *Ross v. Bernhard*, 396 U.S. 531, 538 (1970).  The "real party [of] interest" is ZAGG.  *Id.*  It is of no consequence that the Company was a defendant in the Securities Action and, in this action, the Company essentially is the plaintiff.  *Cf. C.I.S. v. Kann*, 394 N.E.2d 916, 917-18 (Ill. App. Ct. 1979) (finding that collateral estoppel, i.e. "a form of [r]es judicata," applied even when the plaintiffs in the first action were defendants in the second action).

necessary experience and training during the period covered by the Annual Report." ¶¶ 141-42.

Such an inadequate-oversight claim "is possibly the most difficult . . . upon which a plaintiff

might hope to win a judgment." *In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959, 967

(Del. Ch. 1996). Plaintiffs would have to demonstrate that the Individual Moving Defendants

"had clear notice" of improprieties and "simply chose to ignore them or, even worse, to

encourage their continuation." *Guttmann v. Huang*, 823 A.2d 492, 507 (Del. Ch. 2003). The

state of mind required (i.e., "bad faith") is "scienter-based." *Desimone*, 924 A.2d at 935. But

the time period in question (FY10) predates both the "Relevant Period" and Ms. Larabee's

membership on the ZAGG Board. *See* ¶ 26. Furthermore, the Complaint contains no

particularized allegations showing that any director "ignored" known material weaknesses in

internal controls. "[T]he business judgment rule, the protection of an exculpatory [ ] provision,

and the difficulty of proving a *Caremark* claim together function to place an extremely high

burden on a plaintiff to state a claim for personal director liability." *In re Citigroup Inc.*

*S'holder Deriv. Litig.,* 964 A.2d 106, 125 (Del. Ch. 2009). Plaintiffs have not met that burden.

> **B.** **Plaintiffs Lack Standing to Assert Claims Based on the "Background Allegations," Which Occurred Before Most of the Current Directors Joined the Board in Any Event**

Plaintiffs spill a great deal of ink on alleged events (¶¶ 52-73) they lack standing to

challenge, and which would not help them meet their pleading burden anyway. Plaintiffs'

"Background Allegations" describe a "ZAGGbox transaction" (¶¶ 54-64) and an "HzO

transaction" (¶¶ 65-73), both of which are alleged to have involved decisions made by the

ZAGG Board in 2009. These allegations pre-date Ms. Larabee's service on ZAGG's Board,

and thus cannot possibly establish a reasonable doubt as to half of the Board.

Moreover, under Rule 23.1 of the Federal Rules of Civil Procedure, a derivative plaintiff must plead that it was a shareholder "at the time of the transaction complained of[.]" *See also Cadle v. Hicks*, 272 Fed. Appx. 676, 677-78 (10th Cir. 2008) ("This requirement is commonly known as the contemporaneous-ownership rule."). But Plaintiffs only allege that they acquired stock "prior to December 2011." ¶¶ 21-22. Thus, they lack standing to challenge the "ZAGGbox transaction" and "HzO transaction."

### C.   Plaintiffs Fail to Satisfy *Aronson* as to the Compensation and Consulting Agreement Claims

Plaintiffs claim the Individual Moving Defendants wasted corporate assets by approving 1) "bonuses, stock options, and similar performance-based compensation" and 2) Mr. Pedersen's consulting agreement. ¶ 193. These claims are analyzed under the *Aronson* test.[16]

The first prong of *Aronson* is not satisfied since none of the Individual Moving Defendants face a substantial likelihood of liability. To show waste, a plaintiff must allege facts establishing that "what the corporation has received is so inadequate in value that no person of ordinary, sound business judgment would deem it worth that which the corporation has paid." *Grobow*, 539 A.2d at 189 (citation omitted). The test for waste is "extreme" and "rarely satisfied." *Highland Legacy Ltd. v. Singer*, No. Civ. A. 1566-N, 2006 WL 741939, at *7 (Del. Ch. Mar. 17, 2006) (citation omitted). Directors have "wide discretion" with respect to executive compensation in particular. *Brehm*, 746 A.2d at 262 n.56.

Plaintiffs fail to demonstrate how the challenged compensation is comparable to the "unconscionable cases where directors irrationally squander or give away corporate assets." *Id*.

---

[16] *See, e.g.*, *In re HP*, 2012 WL 4468423, at *4.

at 263.  Plaintiffs also do not allege – because they cannot – that any ZAGG officer or director performed no work in exchange for the compensation they received,[17] and Mr. Pedersen's consulting agreement required him to perform specific services.[18]  Compensation to departing executives in particular is "rarely second-guess[ed],"[19] and it hardly is unreasonable to create a structure with ready access to a CEO who led the Company for the past six years.  *See* ¶ 23.

*Brehm* underscores the point.  In that case, the Delaware Supreme Court found that a severance payment valued at $140 million to a company president who only worked for approximately one year was a matter of business judgment and did not constitute waste. *Brehm*, 746 A.2d at 263-264.[20]  The payment at issue here ($910,000) was even farther from waste as it was to be paid pursuant to a consulting agreement that required Mr. Pedersen, ZAGG's CEO for approximately six years (*see* ¶ 23), to perform specific tasks.

---

[17] *See, e.g.*, *Protas v. Cavanagh*, No. 655-VCG, 2012 WL 1580969, at *9 (Del. Ch. May 4, 2012) ("Where, however, the corporation has received '*any substantial* consideration' and where the board has made 'a *good faith judgment* that in the circumstances the transaction was worthwhile,' a finding of waste is inappropriate, even if hindsight proves that the transaction may have been ill-advised.") (quoting *Lewis v. Vogelstein*, 699 A.2d 327, 336 (Del. Ch. 1997)).

[18] *See* Ex. 8 at 3 ("services related to current and historical finances and operations; relationships with suppliers, customers, and vendors; product development; marketing and distribution; representation of the Registrant at public appearances; and participation in the Registrant's meetings as an independent contractor on projects and matters as requested by the Chairperson of the Board of the Registrant").

[19] *See, e.g.*, *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Raines*, 534 F.3d 779, 791 (D.C. Cir. 2008) ("[C]ourts rarely second-guess directors' compensation and severance decisions because the 'size and structure of executive compensation are inherently matters of judgment.'") (citation omitted).

[20] *See also Zucker v. Andreessen*, No. 6014-VCP, 2012 WL 2366448, at *25-35 (Del. Ch. June 21, 2012) (dismissing claims alleging severance package valued at more than $40 million constituted corporate waste for failure to plead demand futility).

Plaintiffs also fail to meet the second prong of *Aronson*.  "[M]ost often the [waste] claim is associated with a transfer of corporate assets that serves no corporate purpose, or for which no consideration at all is received."  *Brehm*, 746 A.2d at 263.  Such a claim "must be dismissed absent particularized factual allegations of 'an exchange that is so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration.'"  *Protas v. Cavanagh*, 2012 WL 1580969, at *9 (citations omitted).  As discussed, the presumption that the Board validly exercised its business judgment has not been rebutted.[21]

### D.      Plaintiffs' Remaining Allegations Fail to Raise a Reasonable Doubt as to Any Director's Disinterestedness

Lacking particularized facts, Plaintiffs resort to boilerplate.  This last-ditch effort fails.

**Committee membership.**  The Complaint alleges that Ms. Larabee's and Mr. Ekstrom's membership on certain Board committees excuses demand.  ¶¶ 149-50.  Plaintiffs do not explain why, and the assertion that committee membership disqualifies directors from considering demand is "contrary to well-settled Delaware law."  *Wood*, 953 A.2d at 142.[22]

**Director fees.**  Plaintiffs assert Mr. Ekstrom and Ms. Larabee lack disinterestedness

---

[21] To the extent Plaintiffs attempt to plead a claim for unjust enrichment based on the same allegations regarding officer and director compensation, that claim fails for the same reasons that Plaintiffs' corporate waste claim fails.

[22] *See also In re Autodesk, Inc. S'holder Deriv. Litig.*, No. C 06-7185 PJH, 2008 WL 5234264, at *10 (N.D. Cal. Dec. 15, 2008) (allegations that directors served on audit committee insufficient); *Andropolis v. Snyder*, No. 05-cv-01563-EWN-BNB, 2006 WL 2226189, at *14 (D. Colo. Aug. 3, 2006) ("[A]ll that Plaintiff's amended complaint and response demonstrates is that Defendant Red Robin has an audit committee and [certain directors] were members of this committee . . . .  This is not enough to meet Plaintiff's pleading standard and absolve him of making a demand on the Board.").

because they were compensated for their service on the ZAGG Board.  ¶ 151.  Of course, this is true of non-employee directors at most public companies, and "courts have routinely rejected the argument that a director's receipt of compensation alone presents a disabling interest when determining demand futility."  *In re Adolor Corp. Deriv.  Litig.*, No. 04-3649, 2009 WL 1325738, at *7 (E.D. Pa. May 12, 2009) (applying Delaware substantive law).[23]

**Directors would not sue themselves.**  Plaintiffs next assert that both Mr. Ekstrom and Ms. Larabee lack disinterestedness because they "would not initiate such litigation, nor be able to prosecute any such action against themselves."  ¶¶ 149-50.  Again, derivative plaintiffs can (and do) say the same thing in virtually every case, but Delaware courts reject such arguments.  *See, e.g.*, *Brehm*, 746 A.3d at 257 n.34 ("It is no answer to say that demand is necessarily futile because . . . the directors 'would have to sue themselves, thereby placing the conduct of the litigation in hostile hands[.]'") (citation omitted).[24]

**Insured-versus-insured exclusion.**  Finally, Plaintiffs argue that the directors' disinterestedness is impaired because they "may" be protected against personal liability by insurance policies which "may" contain "insured-versus-insured exclusion" provisions that "eliminate coverage for any action brought directly by the Company against these Defendants[.]"  ¶ 162.  This argument fares no better than Plaintiffs' others.  *See, e.g.*, *In re*

---

[23] *See also Grobow*, 539 A.2d at 188 (allegations of director compensation "without more, do not establish any financial interest" sufficient to cast their impartiality into doubt), *overruled in part on other grounds by Brehm*, 746 A.2d 244; *White v. Panic*, 793 A.2d 356, 366 (Del. Ch. 2000), *aff'd*, 783 A.2d 543 (Del. 2001) (director compensation does not compromise a director's ability to consider a demand).

[24] *See also Citigroup,* 964 A.2d at 121 ("Demand is not excused solely because the directors would be deciding to sue themselves.").

*Ferro Corp. Deriv. Litig.*, 511 F.3d 611, 622 (6th Cir. 2008) ("Delaware courts have rejected claims that an '*insured vs. insured*' exclusion in the directors' and officers' insurance policy . . . is sufficient to establish demand futility.") (citations omitted); *Carauna v. Saligman*, No. 11135, 1990 WL 212304, at *4 (Del. Ch. Dec. 21, 1990).

*   *   *

In sum, Plaintiffs have failed to plead particularized facts raising a reasonable doubt as to the disinterestedness of any ZAGG director.  Accordingly, the Complaint must be dismissed. *See, e.g.*, *Brehm*, 746 A.2d at 258 (absent sufficient allegations any director lacked disinterestedness, court "need not reach or comment on the analysis of the [lower court] on the independence of the other directors"); *In re Dow Chem. Co. Deriv. Litig.*, No. 4349-CC, 2010 Del. Ch. LEXIS 2, at *25 (Del. Ch. Jan. 11, 2010).

## III. PLAINTIFFS FAIL TO PLEAD PARTICULARIZED FACTS RAISING A REASONABLE DOUBT AS TO ANY DIRECTOR'S INDEPENDENCE

Even if the Court finds that the Complaint pleads particularized facts raising a reasonable doubt as to the disinterestedness of one or two of the directors – and as explained in Section II, *supra*, it should not – the Complaint undoubtedly fails to rebut the presumed independence for at least four of the six Board members.   Again, Plaintiffs do not challenge the independence of Messrs. Heiner, Holiday and Maurer.  Since their allegations as to Ms. Larabee are patently insufficient to demonstrate a lack of independence, this Court need go no further.  In any event, the Complaint's boilerplate allegations of corporate titles and outside business relationships cannot impugn the independence of Mr. Ekstrom and Mr. Hales either.

**Shared board memberships.**  Plaintiffs' main challenge to Ms. Larabee's independence is that she and Mr. Hales "serve together as directors on the Board of Directors

for Norco Inc."   ¶ 158.   But an allegation that individuals serve on the same board of an unaffiliated entity cannot overcome a director's presumed independence.   *See, e.g.*, *Highland*, 2006 WL 741939, at \*5 ("the plaintiff simply makes conclusory allegations that Goldsmith and Steele are dominated by Singer because they served together on a few boards of unaffiliated companies").

 **Corporate titles.**   Emblematic of their "kitchen sink" approach, Plaintiffs allege both that Mr. Hales' current position as CEO gives him "tremendous influence" over Mr. Ekstrom and Ms. Larabee, and that the latter two directors' "integral roles on the Board" give them "tremendous influence" over Mr. Hales.   ¶¶ 159-160.   Neither of these circular allegations pass muster.   As to the sway Mr. Hales supposedly holds over his fellow <u>outside</u> directors, "[e]ven in cases in which the CEO had a supermajority of voting power, courts have upheld outside directors' independence in the face of additional relationships."   *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 808, 821 (Del. Ch. 2005); *see also Beam*, 845 A.2d at 1052 (no reasonable doubt as to independence of other directors from individual who was founder, CEO, and holder of 94% of voting power of corporation).   Plaintiffs do not even allege that Mr. Hales possesses voting control (nor does he).[25]   As to the assertion that Mr. Ekstrom and Ms. Larabee control Mr. Hales through their Board positions, courts reject the argument that inside directors are *per se* disqualified from considering a litigation demand.   *See, e.g.*, *In re Walt Disney Co. Deriv. Litig.*, 731 A.2d 342, 356-57 (Del. Ch. 1998) ("[T]he general Delaware rule [is] that 'the

---

[25] On the other hand, Mr. Pedersen – whom Plaintiffs allege "held an effectively-controlling 18.9% ownership stake in ZAGG" (¶ 4) – was "forced to resign" by the Board in August 2012 (¶ 23), which Board included Ms. Larabee and Mr. Ekstrom.

fact that [the inside directors] hold positions with the company [controlled by Eisner] . . . is no more disqualifying than is the fact that he designated them as directors.'") (citation omitted) *aff'd in part, rev'd in part by Brehm*, 746 A.2d 244.[26]

**Mr. Ekstrom's prior business relationships.**  Plaintiffs allege no prior business relationships involving Ms. Larabee and any of the other ZAGG directors.  They do allege that Mr. Ekstrom lacks independence from Mr. Pedersen because "Defendant Pedersen obtained a $2 million mortgage on his home and land . . . through a lending business . . . run by an asset protection attorney . . . [who] represents vSpring Capital, an entity founded and controlled by Defendant Ekstrom."  ¶ 158.  However, alleging that two directors share a common business contact does not show that either is "beholden" to the other or "so under their influence that their discretion would be sterilized."  *Rales*, 634 A.2d at 936.  Nor do allegations that Mr. Ekstrom controls an entity that invested in HzO, or that he and Mr. Pedersen share a vague "long-standing relationship with one another" (¶ 158), disable Mr. Ekstrom's ability to consider a demand.  "[T]o render a director unable to consider demand, a relationship must be of a bias-producing nature."  *Beam*, 845 A.2d at 1050.  Plaintiffs fail to plead particularized facts showing that any alleged prior business relationship between Mr. Ekstrom and Mr. Pedersen renders Mr. Ekstrom incapable of considering a demand to sue Mr. Pedersen.  Indeed, Mr. Ekstrom was part of the Board that "forced [Mr. Pedersen] to resign" in August 2012.  ¶ 23.

**Shared alma mater.**  Finally, Plaintiffs assert that Messrs. Hales and Ekstrom – but not

---

[26] *See also Benihana of Tokyo, Inc. v. Benihana, Inc.*, 891 A.2d 150, 176-77 (Del. Ch. 2005) (CEO independent even though interested director chaired compensation committee); *Jacobs v. Yang*, No. Civ. A. 206-N, 2004 WL 1728521, at *4-5 (Del. Ch. Aug. 2, 2004) *aff'd*, 867 A.2d 902 (Del. 2005) (CEO independent even though board controlled his employment).

Ms. Larabee – lack independence from Mr. Pedersen because each attended Brigham Young. The Complaint does not allege the three were at BYU at the same time, let alone that they knew one another as students.[27]  In any event, even if Plaintiffs had adequately alleged a "longtime friendship" between the three (¶ 158), "for presuit demand purposes, friendship must be accompanied by substantially more in the nature of serious allegations that would lead to a reasonable doubt as to a director's independence."  *Beam*, 845 A.2d at 1052.  Indeed, "a plaintiff must plead facts that would support the inference that because of the nature of a relationship . . . the non-interested director would be more willing to risk his or her reputation than risk the relationship with the interested director."  *Id*.  Plaintiffs have not done so.[28]

\*     \*     \*

Plaintiffs have failed to plead particularized facts raising a reasonable doubt as to the disinterestedness or independence of any ZAGG director, much less half of the Board.  Thus, the Complaint must be dismissed in its entirety.  *See, e.g.*, *Haber*, 465 A.2d at 357.

---

[27] *See, e.g.*, *In re Accuray, Inc. S'holder Deriv. Litig*., 757 F. Supp. 2d 919, 931 (N.D. Cal. 2010) ("[T]he claim that Davila lacked independence because she and Adler were both affiliated with Stanford University also fails.  Plaintiffs do not even allege that Davila and Adler knew each other at Stanford.  That they were both on the same campus at the same time is not enough to overcome the presumption of a director's independence.").

[28] It is anticipated that, as is common, Plaintiffs will attempt to bolster their inadequate independence allegations by citing *In re Oracle Corp. Deriv. Litig.*, 824 A.2d 917 (Del. Ch. 2003).  But *Oracle* addressed a request by a board-created "Special Litigation Committee" to terminate pending derivative litigation as not in the company's best interests, not demand futility.  "Unlike the demand-excusal context, where the board is presumed to be independent, the SLC has the burden of establishing its own independence by a yardstick that must be 'like Caesar's wife' – 'above reproach.'"  *Beam*, 845 A.2d at 1054-55 (citation omitted).

## IV.     THE COMPLAINT FAILS TO STATE A CLAIM

Even assuming, *arguendo*, that demand was excused, the Complaint still should be dismissed as to the Individual Moving Defendants for failure to state a claim.

Plaintiffs' "obligation to provide the 'grounds' of [their] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (second alteration in original) (citation omitted).  Thus, Plaintiffs must set forth "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  "A claim has facial plausibility where the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct 1937, 1949 (2009). Neither the sole federal claim nor any of the state claims meet this standard.

### A.     The Section 14(a) Claims Should Be Dismissed (Count I)

Plaintiffs' Section 14(a) claim should be dismissed for failure to plead an essential link. Plaintiffs have not demonstrated – as they must – how Mr. Pedersen's re-election caused the Company harm.  Instead, they allege Mr. Pedersen's pledging harmed the Company.  *See* Section II.A.2, *supra*.  An essential link is also lacking because Mr. Pedersen could have re-elected himself.  *See id.*  And, in any event, the Section 14(a) claim is precluded both as a matter of law and by the reasoning of the Securities Order.  *See* Section II.A.3, *supra*.[29]

---

[29] The Court can independently dismiss Count I for failure to plead the requisite state of mind.  *See supra* note 12 (listing elements of a Section 14(a) claim); *see also* Securities Order at 14 (securities plaintiffs failed to plead Section 14(a)'s state of mind element).

**B.**     **The State Law Claims Should Be Dismissed (Counts II, III & IV)**[30]

Officers and directors are protected in carrying out their duties by the business judgment rule.  *See, e.g.*, *Citigroup*, 964 A.2d at 125.  The rule is a powerful "presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company."  *Aronson*, 473 A.2d at 812.  Plaintiffs bear the burden of rebutting this presumption.

Plaintiffs' claims are also subject to significant limitations imposed by Nevada law, pursuant to which ZAGG adopted an exculpatory provision in its Articles of Incorporation.  *See* Section I.C, *supra*.  Thus, the Individual Moving Defendants can be liable to the Company only for "intentional misconduct, fraud or a knowing violation of the law."  Nev. Rev. Stat. § 78.138(7)(b).  Claims for negligent breaches of the duty of care are "precluded."  *In re Sagent Tech., Inc., Deriv. Litig.*, 278. F. Supp. 2d 1079, 1095 n.9 (N.D. Cal. 2003).  As to the claim that sounds in fraud (Count II), Plaintiffs also must satisfy the requirements of Rule 9(b): "[a]verments of fraud must be accompanied by 'the who, what, when, where and how' of the misconduct charged."  *Vess v. Ciba-Giegy Corp. USA*, 317 F.3d 1097, 1103-06 (9th Cir. 2003) (citation omitted).[31]  The Complaint does not satisfy Rule 8, must less Rule 9(b).

---

[30] Count V is not discussed herein as it is asserted against Mr. Ueyama only.

[31] *See also Steed v. Warrior Capital, L.L.C.*, No. CIV-06-348-F, 2007 WL 2458790, at *3 (W.D. Okla. Aug. 24, 2007) (same).  Plaintiffs repeatedly and emphatically employ the language of fraud to support their claims.  For instance, the Individual Moving Defendants "conceal[ed]" (¶¶ 4, 7, 14, 77, 87, 100, 121) and "cover[ed] up" (¶¶ 6, 152) that Mr. Pedersen "secretely" (¶ 3) pledged his shares in a margin account.  Similarly, the Individual Moving Defendants "conceal[ed]" (¶¶ 6, 7, 87, 97, 121) a "secret" (¶¶ 7, 14, 35, 87, 109, 121, 170) and "hidden" (¶ 125) succession plan to replace Mr. Pedersen as Chairman and CEO of the Company, by "selectively disclos[ing]" (¶¶ 82, 83) facts regarding Mr. Hales' hiring and

(continued...)

### 1.    The Fiduciary Duty Claim Should Be Dismissed (Count II)

Plaintiffs fail to allege bad faith as to any Individual Moving Defendant because the Complaint includes no particularized facts showing that any of them "had 'actual or constructive knowledge' that their conduct was legally improper."  *See Citigroup*, 964 A.2d at 125 ("A plaintiff can thus plead bad faith by alleging with particularity that a director *knowingly* violated a fiduciary duty or failed to act in violation of a *known* duty to act, demonstrating a *conscious* disregard for his duties.").[32]  "A determination of whether the alleged misleading statements or omissions were made with knowledge or in bad faith requires an analysis of the state of mind of the individual director defendants."  *Id*. at 134.[33]  Yet the Complaint lumps the Individual Moving Defendants together and asserts that all of them had "knowledge," generally on account of their status as officers, directors, or committee members *See, e.g.*, ¶¶ 77, 92, 94; *see also* Section II.D, *supra*.

To the extent Plaintiffs claim that the Individual Moving Defendants failed to exercise proper oversight (¶¶ 141-142), the end result is the same:  the Complaint does not meet the

---

(...continued from previous page)
responsibilities.  Indeed, rather than disavowing the allegations of fraud, Count II incorporates "each and every allegation contained above, as though fully set forth [t]herein."  ¶ 177.

[32] *See also Walt Disney*, 906 A.2d at 67 (an example of a deliberate breach of fiduciary duty is where a "fiduciary acts with the intent to violate applicable positive law" or "conscious[ly] disregard[s]" his duties) (citation omitted).

[33] One of the few relevant differences between Delaware and Nevada corporate law is that under Delaware law, "exculpatory provisions" protect only directors, whereas under Nevada law, such provisions may – and ZAGG's does – protect both directors and officers.  *Compare* 8 Del. C. § 102(b)(7) *with* Nev. Rev. Stat.  § 78.138(7)(b); *see also supra* note 5 and accompanying text.  Thus, Plaintiffs must plead scienter as to Mr. O'Brien, a ZAGG officer.

"scienter-based" standard for such a claim.  *Desmione*, 924 A.2d at 935.  To plead a *Caremark*

claim, a plaintiff "must show that the directors *knew* they were not discharging their fiduciary

obligations or that [they] demonstrated a *conscious* disregard for their responsibilities."

*Citigroup*, 964 A.2d at 123; *see also* Section II.A.4, *supra*.  Plaintiffs fail to offer any facts

demonstrating that ZAGG had no internal controls or that any of the Individual Moving

Defendants "consciously failed" to exercise proper oversight.

### 2.     The Unjust Enrichment Claim Should Be Dismissed (Count III)

"Unjust enrichment is the unjust retention of a benefit to the loss of another, or the

retention of money or property of another against the fundamental principles of justice or

equity and good conscience."  *Nev. Indus. Dev. v. Benedetti*, 741 P.2d 802, 804 n.2 (Nev. 1987)

(citation omitted).   It requires:  "(1) a benefit conferred on the defendant by the plaintiff; (2)

appreciation of the benefit by the defendant; and (3) acceptance and retention of the benefit by

the defendant (4) in circumstances where it would be inequitable to retain the benefit without

payment."  *Kennedy v. Carriage Cemetery Servs.*, 727 F. Supp. 2d 925, 932 (D. Nev. 2010).

Plaintiffs assert the Individual Moving Defendants were "unjustly enriched" through

"bonuses, stock options, stock appreciation rights, and similar such compensation."  ¶ 186.

They do not explain why such payments were unjust.[34]  Instead, Plaintiffs make only

---

[34] *See, e.g.*, *Sherman v. Ryan*, 911 N.E.2d 378, 399 (Ill. App. Ct. 2009) (plaintiffs failed to
state claim for unjust enrichment where they alleged that Aon directors were unjustly "paid
substantial salaries and bonuses" while the company engaged in "wrongful" conduct leading to
settlement payments of more than $228 million, but failed to allege that "[the directors]
performed <u>no</u> work in exchange for their compensation") (emphasis added).

conclusory statements, unsupported by facts.[35]  Accordingly, this claim should be dismissed.

### 3.      The Waste Claim Should Be Dismissed (Count IV)

The Complaint does not meet the "extreme" standard for waste.  *See* Section II.C,

*supra*.  Directors have broad discretion regarding compensation matters, and Plaintiffs plead no

facts showing any individual's compensation was "unconscionable."  *Brehm*, 756 A.2d at 263.

Plaintiffs likewise fail to show the consulting agreement with Mr. Pedersen was without

consideration or otherwise improper, particularly in light of the benefits ZAGG received.  *See*

Section II.C, *supra*.  Finally, any allegation that the Company will "expend millions of dollars

as a result of Defendant Pedersen's reckless conduct and the Board's subsequent cover-up" (¶

166) is both speculative[36] and undermined by the Securities Order.[37]

---

[35] *See Accuray*, 757 F. Supp. 2d at 935 (dismissing as conclusory claim of unjust enrichment that alleged that directors were "unjustly enriched as a result of the compensation and director remuneration they received while breaching fiduciary duties owed to [the company]").

[36] *See e.g.*, *In re United Telecomms., Inc. Sec. Litig.*, No. 90-2251-EEO, 1993 WL 100202, at *2 (D. Kan. Mar. 4, 1993) (dismissing derivative complaint where plaintiff alleged that company had been damaged when named in securities class action).

[37] Mr. O'Brien is not alleged to have been a ZAGG director at any time.  Thus, the waste claim must be dismissed as to Mr. O'Brien for this additional reason.

## CONCLUSION

For the foregoing reasons, Nominal Defendant ZAGG and the Individual Moving

Defendants respectfully request that the Court GRANT their motion to dismiss the Complaint.


DATED: April 4, 2014


                              /s/ Kevin N. Anderson
                              Kevin N. Anderson, Esq.
                              Artemis D. Vamianakis, Esq.
                              FABIAN & CLENDENIN

                              Steven M. Schatz, Esq.
                              David J. Berger, Esq.
                              Bryan J. Ketroser, Esq.
                              Nessia S. Kushner, Esq.
                              WILSON SONSINI GOODRICH & ROSATI

                              *Attorneys for Nominal Defendant ZAGG Inc and the*
                              *Individual Moving Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 4th day of April, 2014, I caused the foregoing document to be filed electronically via the electronic filing system of the United States District Court for the District of Utah, which caused a true and correct copy of the foregoing to thereafter be served electronically via the District Court's ECF noticing system upon those parties registered to receive electronic service in this case.

/s/ Kevin N. Anderson