Brent R. Baker (#5247)
brb@clydesnow.com
D. Loren Washburn (#10993)
dlw@clydesnow.com
Jennifer A. James (#3914)
jaj@clydesnow.com
CLYDE SNOW & SESSIONS
201 S. Main Street, 13th Floor
Salt Lake City, Utah 84111-2516
Telephone: 801.322.2516
Facsimile: 801.521.6280

*Attorneys for Defendant Robert G. Pedersen*

---

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| IN RE: ZAGG, INC. SHAREHOLDER DERIVATIVE ACTION | Master File No. 12-cv-1188 |
| | **DEFENDANT ROBERT G. PEDERSEN'S MOTION TO DISMISS PLAINTIFFS' VERIFIED CONSOLIDATED SHAREHOLDER DERIVATIVE COMPLAINT** |
| THIS DOCUMENT RELATES TO: | |
| ALL ACTIONS | Judge: Dee Benson |

## <u>TABLE OF CONTENTS</u>

**RELIEF SOUGHT AND GROUNDS FOR MOTION** ............................................................. vii

**INTRODUCTION** ................................................................................................................... vii

**STATEMENT OF RELEVANT BACKGROUND FACTS** ...................................................... viii

    I.    Background of ZAGG, Inc. and Pedersen's Margin Account. ....................................... viii

    II.    Plaintiffs Did Not Make a Board Demand. ........................................................................ xi

    III.    The Derivative Complaint Mirrors the Class Action Complaint. ................................. xii

    IV.    The Court Dismissed the Class Action Complaint. ....................................................... xiv

**APPLICABLE LAW** ................................................................................................................. 1

    I.    LEGAL STANDARD ........................................................................................................ 1

    II.    CHOICE OF LAW ........................................................................................................... 1

**ARGUMENT** ............................................................................................................................ 3

    I.    PLAINTIFFS HAVE INSUFFICIENTLY PLED DEMAND FUTILITY. ...................... 3

        A.    Plaintiffs Must Plead Particularized Facts Rebutting the Presumption that ZAGG's Directors Are Disinterested and Independent Actors. .......................................................... 4

        B.    Demand Cannot Be Excused for Count 1 (Section 14(a)), Count III (Unjust Enrichment), Count IV (Waste of Corporate Assets, or Count V (Insider Trading) Where Plaintiffs Make Do Not Plead With Particularity Why Demand Would Be Futile As to Each of These Claims. ..................................................................................................................... 5

        C.    Plaintiffs' Muddled Futility Allegations Fail to Establish that Demand is Excused Under *Aronson.* ...................................................................................................................... 6

        D.    Plaintiffs' Remaining Futility Allegations Fail to Establish that Demand is Excused Under *Rales* ................................................................................................................................ 7

            1.    Plaintiffs Fail to Plead that the Director Defendants Are Interested By  Because They Face a Substantial Likelihood of Liability in this  Case. ........................................... 7

2.      Plaintiffs Fail to Plead with Particularity That The Director Defendants Were Controlled By or Beholden to Any Other Interested Director. ......................................... 11

**III.    PLAINTIFFS HAVE FAILED TO ALLEGE SUFFICIENT FACTS TO MEET FEDERAL PLEADING STANDARDS ON THEIR CLAIMS.**................................................ 13

A.    Plaintiffs Fail to State a Claim under Section 14(a) of the Exchange Act. ............... 13

B.    Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty. .................................. 17

1.      Plaintiffs' Claims for Breach Of Fiduciary Duty are Allegations of Fraud  and Must Be Pleaded with Particularity in Accordance with Federal Rule  of Civil Procedure 9(b) and Must Plead Scienter.......................................................................................... 17

2.      Plaintiffs Have Not Alleged Intentional Misconduct, Fraud, or a Knowing Violation of Law and Have Not Alleged Scienter. .......................................................... 19

3.      Plaintiffs' Complaint Fails to Allege Even a Prima Facie Case For Breach of Fiduciary Duty. ................................................................................................................ 21

C.    Plaintiffs Fail to State a Claim for Waste of Corporate Assets. ................................ 22

D.    Plaintiffs Fail to State a Claim for Unjust Enrichment.............................................. 24

**CONCLUSION** ................................................................................................................ 25

# TABLE OF AUTHORITIES

**Cases:**

*Alaska Elec. Pension Fund v. Olofson*, No. 08-2344-CM, 2009 WL 1580296, at *8 (D. Kan. Jun. 3, 2009) ........................................................................................................................... 16

*Aronson v. Lewis*, 473 A.2d 805 (Del. 1984) .......................................................................... 4, 12

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ................................................................................ 1

*Beam v. Stewart*, 845 A.2d 1040, 1048 (Del. 2004) ................................................................ 4, 12

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, (2007) .................................................................. 1

*Bolger v. First State Financial Services*, 759 F.Supp. 182, (D. N.J. 1991) ................................. 15

*Bond Opportunity Fund v. Unilab Corp.*, No. 99 Civ. 11074, 2003 WL 21058251, at *3 (S.D.N.Y. May 9, 2003) ................................. 13

*Swanson v. Weil*, No. 11-cv-02142-WYD-KLMN, 2012 WL 4442795, (D. Colo. Sept. 26, 2012) ...................................................................................................... 16

*Derivative Litig.*, 507 F. Supp. 2d 302, (S.D.N.Y. 2007) ............................................................. 2

*Dura Pharm. Inc. v. Broudo*, 544 U.S. 336, (2005) .................................................................... 15

*Fink v. Komansky*, No. 03 Civ. 0388(GBD), 2004 WL 2813166, (S.D.N.Y. Dec. 8, 2004) ............................................................................. 8

*Fisher v. Kanas*, 467 F. Supp. 2d 275, (E.D.N.Y. 2006) ................................................. 13, 15, 16

*In re Amerco Derivative Litig.*, 252 P.3d 681, (Nev. 2011) .......................................... 18, 20, 21

*In re Citigroup, Inc. S'holder Deriv. Litig.*, 964 A.2d 106, (Del. Ch. 2009) ................................. 9

*In re Dow Chem. Co. Deriv. Litig.*, 2010 WL 66769, (Del. Ch. Jan. 11, 2010) ............................ 9

*In re Dynegy, Inc. Sec. Litig.*, 339 F.Supp.2d 804, (S.D. Tex. 2004) ............................................ 9

*In re Fleet/Norstar Sec. Litig.*, CIV. A. 90-0173B, 1991 WL 185171 (D.R.I. June 5, 1991) ...... 15

*In re Goldman Sachs Gp., Inc. S'holder Litig.*, 2011 WL 4826104, (Del.Ch. Oct. 12, 2011) ............................................................................. 10

*In re Verisign Inc. Derivative Litig.*, 531 F.Supp.2d 1173, (N.D.Cal.2007) ........................... 2, 22

*Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90 (1991)................................................ 2

*Kamerman v. Pakco Companies, Inc.*,
   No. 76 CIV. 3912, 1978 WL 1055, (S.D.N.Y. Feb. 6, 1978)................................... 17

*Kennedy v. Carriage Cemetery Srvcs., Inc.*, 727 F.Supp.2d 925, (D. Nev. 2010) ............... 24, 25

*Koppel v. 4987 Corp.*, 167 F.3d 125, (2d Cir. 1999) ................................................. 15

*La. Mun. Police Employees Ret. Sys. v. Pandit*,
   No. 08-Civ.-7389(LTS)(RLE), 2009 WL 2902587, (S.D.N.Y. Sept. 10, 2009) .................... 11

*Local 295/Local 851 IBT Employer Grp. Pension Trust & Welfare Fund v. Fifth Third Bancorp.*,
   731 F.Supp.2d 689, (S.D. Ohio 2010) ................................................................ 10

*Louisiana Mun. Police Employees' Retirement System v. Hesse*, No. 12 CIV 4017, 2013 WL
   4516427, (S.D.N.Y. July 26, 2013) .......................................................... passim

*Lowery v. Utah*, No. 2:05CV884 TC, 2006 WL 2868398, (D. Utah, October 4, 2006)............... 14

*MACTEC, Inc. v. Gorelick*, 427 F.3d 821, (10th Cir.2005)........................................ 14

*Malpiede v. Townson*, 780 A.2d 1075, (Del. 2001) ................................................ 21

*Metro Commun. Corp. BVI v. Adv. Mobilecomm Technologies Inc.*,
   854 A.2d 121, (Del. Ch. 2004)........................................................................ 22

*MCG Capital Corp. v. Maginn*, No. 4521-CC, 2010 WL 1782271, (Del. Ch. 2010) ................. 5

*Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, (1970)........................................... 14

*Newsome v. Gallacher*, 722 F.3d 1257, (10th Cir. 2013) .......................................... 2

*Rales v. Blasband*, 634 A.2d 927, (Del. 1993) ................................................... 5

*Ross v. Bernard*, 396 U.S. 531, (1970)......................................................... xi

*Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, (1977)...................................... 15

*Seni v. Peterschmidt*, No. 12-cv-00320-REB-CBS, 2014 WL 561618,
   (D. Colo., February 12, 2014)......................................................................... 3

*Shoen v. SAC Holding Corp.*, 137 P.3d 1171, (Nev. 2006)......................................... 2

*South v. Baker*, 62 A.3d 1 (Del. 2012 ........................................................ 10

*Stalk v. Mushkin*, 199 P.3d 838, (Nev. 2009) .............................................................. 21

*Taylor v. Kissner*, 893 F. Supp.2d 659, (D. Del. 2012) ................................ 4, 18, 22, 23

*Topaz Mut. Co., Inc. v. Marsh*, 839 P.2d 606, (Nev. 1992) ...................................... 24

*U.S. v. Matthews*, 787 F.2d 38, (2d Cir. 1986) ...................................................... 15

*Wood v. Baum*, 953 A.2d 136, (Del. 2008) ................................................... 8, 10, 18

*Zirn v. VLI Corp.*, 681 A.2d 1050,  (Del.1996) ...................................................... 22

## Statutes/Regulations:

15 U.S.C. § 78n(a) ................................................................................................ 1

15 U.S.C. §§ 78u-4(b)(1) ..................................................................................... 2

15 USC § 78u-4(b)(4) .......................................................................................... 15

8 Del. Code § 102(b)(7) ....................................................................................... 18

Nevada Revised Statutes §78.138(7) .................................................................. 17

Fed. R. Civ. P. 9(b) ..................................................................................... iii, 17, 18

Fed. R. Civ. P. 12(b)(6) ................................................................................... vi, 1

Fed. R. Civ. P. 12(f) ............................................................................................ 9

Fed. R. Civ. P. 23.1(a) ................................................................................. passim

12 C.F.R. § 220 .................................................................................... viii, ix, x, xi

17 C.F.R. § 240.14a-9(a) ...................................................................................... 1

## RELIEF SOUGHT AND GROUNDS FOR MOTION

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and DUCivR 7-1, Defendant Robert G. Pedersen II ("Pedersen") respectfully moves the Court to enter an Order dismissing the Verified Consolidated Shareholder Derivative Complaint ("Derivative Complaint" or "Complaint") against him for failure to state a claim upon which relief can be granted.  Plaintiffs (sometimes "Derivative Plaintiffs") purport to bring and maintain derivative causes of action against Defendants, including Pedersen as former CEO and Chairman of the Board of ZAGG, Inc. ("ZAGG"), for violation of Section 14(a) of the Securities Exchange Act of 1934 and various internal corporate governance claims, such as breach of fiduciary duty, unjust enrichment, and corporate waste.  The grounds for Pedersen's Motion are that Plaintiffs' claims fail to satisfy the requirements of Federal Rule of Civil Procedure 23.1 to plead, with particularity, that a sufficient "board demand" was made or "demand futility," and fail to sufficiently plead any their claims upon which relief can be granted.  Because the deficiencies in the Plaintiffs complaint cannot be cured, Pedersen respectfully requests that the Court dismiss the Derivative Complaint with prejudice.

## INTRODUCTION

The claims in the Derivative Complaint are based on the same not-actionable conduct that this Court has already seen in the class action lawsuit, it dismissed two months ago.[1]  The fact that this is a derivative case does not make it any more capable of surviving a motion to dismiss.  To the contrary, in addition to the substantive pleading requirements, Plaintiffs here have taken on the added burden of pleading demand futility after their decision not to make a board demand.

---

[1] *Apple, et al v. ZAGG, Inc. et al,* Case No. 2:12-cv-00852-DB (the "Class Action").

Again, Plaintiffs plead the existence of a "secret succession plan."  And again the same accumulation of public statements about Pedersen and Hales does not add up to a secret succession plan.

Again, they plead the failure to disclose Robert Pedersen's margin account in ZAGG's corporate filings.  And again they cannot plead that the failure to disclose caused any harm or that Pedersen, or any of the other Defendants, knew it was required to be disclosed or that failing to disclose it could be misleading.

Even if substantive claims based on these events could survive a motion to dismiss, which we've already seen that they cannot, Plaintiffs have the threshold problem of demonstrating demand futility, such that they are entitled to wrest control of ZAGG's corporate affairs from its directors.  Their decision not to make a board demand condemns Plaintiffs to dismissal because they cannot plead that a demand would have been futile here where a majority, if not all, of ZAGG's directors were disinterested and independent actors.

The carbon copy of this case could not survive its first iteration as a class action and cannot survive now for the same reasons and with the added failings in Plaintiff's pleadings regarding demand futility. Accordingly, it should be dismissed.

## STATEMENT OF RELEVANT BACKGROUND FACTS[2]

### I.      Background of ZAGG, Inc. and Pedersen's Margin Account.

ZAGG is a Nevada corporation with its principal place of business in Salt Lake City. In March, 2007, ZAGG merged with a public company, Amerasia Khan Enterprises, Ltd. in a

---

[2]  For purposes of determining Pedersen's Rule 12(b)(6) motion to dismiss, the following "facts" are taken from Plaintiffs' Complaint, documents incorporated by reference in the Complaint, and/or judicially noticeable materials.  (*See* Pedersen's Request for Judicial Notice in Support of Motion to Dismiss ("RJN"), filed concurrently herewith.  Pedersen does not admit that any of these factual allegations are true but recognizes that they must be assumed as true for purposes of the instant Motion.

reverse merger transaction. The surviving company, ZAGG Inc., adopted and amended the

Articles of Incorporation of Amerasia, which govern the company today.   (*See* RJN, Ex. D.)

ZAGG's Articles of Incorporation contain, as article IV, the following language:

> To the fullest extent permitted by the laws of the State of Nevada
> (currently set forth in NRS 78.138) . . . no director or officer of the
> Corporation shall be liable to the Corporation or to its stockholders for
> damages for breach of fiduciary duty as a director or officer. . . . [E]xcept
> that this provision shall not eliminate or limit the liability of a director to
> the Corporation or to its shareholders for monetary damages otherwise
> existing for . . . (ii) acts or omissions not in good faith or which involve
> intentional misconduct or a knowing violation of law.

Exhibit D to RJN.

From 2006 to August 2012, Robert Pedersen was an officer and director of ZAGG.

(Compl. ¶ 23.)  Indeed, he served as the Chief Executive Officer during that entire time period.

As founder, CEO, and director, Pedersen owned a large block of the shares of ZAGG. (*Id*. at ¶

74.)  Eventually, at some point before December 2011, Pedersen placed some of his ZAGG stock

in a margin account and used that stock as collateral for a loan against the value of his shares.

(Compl. ¶ 74.)

In December 2011, the price of ZAGG stock decreased due to the fear, ultimately

realized, that a block of shareholders who obtained their shares in ZAGG's purchase of iFrogz

would dump millions of shares on the market in late December, 2011, when that block of shares

became freely tradable. (10-Q, p. 7, n. 2, RJN, Ex. E.)  This decrease in share price triggered a

decrease in the value of Pedersen's collateral and when the value of the collateral declined

sufficiently, triggered a margin call. *See also* 12 C.F.R. § 220 (limiting the amount of credit a

broker may extend on securities pledged as collateral to "50 percent of the current market value

of the security").  As a result of this margin call, on December 21, 2011, Pedersen's broker sold

345,200 shares of Pedersen's stock that was pledged as collateral. (RJN, Ex. G.)  To be clear, the

shares at issue were Pedersen's personal shares. This transaction was reported on a Form 4 filed electronically on December 23, 2011, and a Form 144 filed by mail also dated December 23, 2011. (*See id*.)  The Form 4 included a note – that is not required by the law – that the shares were sold to meet "an immediate financial obligation." (*See id*.)  The Form 144 included a similar note listing the purpose of the transaction as to "meet  margin calls." (*Id*.)  Both documents are publicly available documents filed with the SEC.

On April 27, 2012, ZAGG filed its definitive proxy statement with the SEC (the "Proxy Statement") for 2012.  (Compl. ¶ 8; RJN, Ex. C.)  The Proxy Statement identified the number of shares beneficially owned by Pedersen but did not identify whether any of these shares were pledged as security. (*See id*.)  The Proxy Statement sought action on two issues: First, to elect five directors of ZAGG.  Second, to confirm the appointment of KPMG as the company's auditors. (Compl. ¶ 89.)  The Proxy Statement did not seek authority to pay any salary increases or bonuses.  (*See, e.g.*, RJN, Ex. C.)  The Proxy statement also disclosed that the Pedersen was not compensated for serving as Chairman of the Board of Zagg.  (*Id.,*)

The Complaint does not allege that Pedersen, or for that matter any of the Defendants, knew whether disclosure of shares pledged as security was required in a proxy statement. (*See, e.g.*, Compl.)  Further, the Complaint does not allege that Pedersen, or the other Defendants, with knowledge that reporting the time of pledged shares was required, instead deliberately chose not to disclose the pledges. (*See, e.g., id*.)  Indeed, the Complaint neither contains nor suggests a plausible motive for them to do so.   In any event, Plaintiffs speculate that had the pledges been disclosed, the vote to re-elect the directors for 2012 may have turned out differently, although Plaintiffs do not provide any support for this assertion or even identify how the vote would have been different.  (*Id*. at ¶¶ 93-96.)

In August, 2012, a sudden decrease in the price of ZAGG stock, paradoxically following a report from ZAGG that it would exceed quarterly revenue projections, caused a second margin call. (RJN, Ex. F.) This time, the broker sold 515,000 shares. (Compl. ¶ 11.)  In the aftermath of this second margin call, Pedersen resigned his position as CEO and his seat on the ZAGG Board. (Compl. ¶¶ 110, 120.)

Randy Hales, who had been a board member since October 2010 and had been made Chief Operating Officer in December, 2011, was appointed interim (and later permanent) CEO. (Compl. ¶ 24.)  In an investor phone call, Hales explained that Pedersen's departure from ZAGG had been entirely related to the margin call situation, which began in December 2011 and recurred in August 2012. (*Id.* at ¶ 120.)  Pedersen eventually entered into a Consulting Agreement with ZAGG, paying him $910,000 for a year's service as a consultant to the company, slightly less than his total compensation for 2011. (*Id.* at ¶ 114; Proxy Statement at p. 21, RJN, Ex. C.)

Later in 2012, multiple lawsuits were filed both in the form of class action lawsuits by shareholders and in the form of derivative lawsuits that purported to represent ZAGG in asserting claims against its current and former board members.  The class action lawsuits were consolidated into a single class action lawsuit, *Apple, et al v. ZAGG, Inc. et al,* Case No. 2:12-cv-00852-DB (the "Class Action"), which has already been dismissed by this Court, as set forth below.  The derivative actions were also consolidated into the present Derivative Action that is at issue in this Motion.

## II.     Plaintiffs Did Not Make a Board Demand.

At the time these derivative actions were filed, the ZAGG Board of Directors consisted of six members: Todd Heiner, Brad Holiday, Dan Maurer, and Defendants Ekstrom, Hales, and

Larabee. (Compl. ¶ 139.) Derivative Plaintiffs admit that they not make a demand on the ZAGG

Board of Directors to investigate or bring this action.  (Compl. ¶ 138.)  Instead, they assert that

making demand on the Board would have been futile for their claims because half of the Board

at the time this action was commenced (Eckstrom, Hales and Larabee) lacks objectivity,

breached their duties of loyalty, or participated in the wrongdoing.  (*Id.* ¶¶ 138-141.)

Necessarily, then, Plaintiffs do not contend that at least the other half of the Board (Heiner,

Holiday and Maurer) could have considered a demand impartially.

**III.     The Derivative Complaint Mirrors the Class Action Complaint.**

The allegations in this Derivative Action are virtually identical to those in the Class

Action Complaint. The present Complaint names the same Defendants[3] and contains the same

underlying factual allegations of misconduct as the Class Action Complaint.

The Derivative Complaint grounds all of its claims in the same two alleged omissions

that were at the core of the Class Action Complaint[4]:  (1) ZAGG's failure to report Pedersen's

stock pledges in the 2012 Proxy Statement, and (2) the failure to disclose an alleged secret

succession plan to replace Pedersen as CEO and Chairman of the Board. Pedersen offers the

following chart to illustrate how closely the Derivative Complaint tracks the Class Action

Complaint:

---

[3]  Both the Derivative Action and Class Action name Pedersen, Randal Hales, Brandon T.
O'Brien, Edward D. Ekstrom, Shuichiro Ueyama, Cheryl A. Larabee, and ZAGG, Inc.
("ZAGG") as Defendants.  (*See* Deriv. Compl., ¶¶22-29; Class Action Compl., ¶¶18-26, RJN,
Ex. B.)  ZAGG is named as a "nominal Defendant" to the Derivative Action.  However, this
designation is inaccurate.  The shareholder Plaintiffs in this Derivative Action are only "nominal
plaintiffs"; ZAGG is the "real party in interest" *Ross v. Bernard,* 396 U.S. 531, 538 (1970).

[4] The Derivative Complaint contains a myriad of other allegations about alleged past misconduct,
but grounds liability only in the failure to disclose the pledges and the secret succession plan.
(*See, e.g.,* Compl. ¶¶ 52-73, 168-200.)

| Derivative Complaint | Class Action Complaint |
|---|---|
| **Pledging the Stock –** "Prior to the Relevant Period," Pedersen "secretly borrowed substantial amounts of monies and pledged his ZAGG shares as collateral creating a 'margin call situation.'" This "reckless pledging of shares exposed Pedersen's ownership interest in ZAGG to the risk of sudden and involuntary open-market liquidation through margin calls," that threatened ZAGG share price. (Deriv. Compl., ¶ 3.) | **Pledging the Stock –**"a 'margin call situation,' began brewing in the Company, whereby Pedersen borrowed substantial amounts of monies, putting up his ZAGG shares as collateral." This "reckless pledging of shares threatened both Pedersen's ownership and control of Company," and "exposed his ownership interest in ZAGG to the risk of sudden and involuntary open-market liquidation through margin calls" that threatened share price. (Class Action Compl., ¶¶ 3, 5.) |
| **The Extent of Pedersen's Ownership**: The non-disclosure of the margin accounts was "particularly egregious" because Pedersen owned an "effectively controlling" 18.9% interest in ZAGG stock.    (Deriv. Compl., ¶ 4.) | **The Extent of Pedersen's Ownership**: Pedersen's margin holdings were of "acute concern" to shareholders because Pedersen owned an "effectively controlling" 18.9% interest in ZAGG stock. (Class Action Compl., ¶ 4.) |
| **Board's Knowledge**: ZAGG and the other Defendant directors/officers of ZAGG had actual knowledge of Pedersen's margin accounts solely by virtue of their positions in ZAGG.  No particularized facts to support these conclusory allegations are provided.  (*See* Deriv. Compl., ¶¶ 4 , 36, 77, 92, 94.) | **Board's Knowledge**: ZAGG and the other Defendant directors/officers of ZAGG had actual knowledge of Pedersen's margin accounts solely by virtue of their positions in ZAGG.  No particularized facts to support these conclusory allegations are provided.  (*See* Class Action Compl., ¶ 88 |
| **Failure to Disclose**: ZAGG failed to disclose the number of shares pledged as security by named executive officers, directors and director nominees in ZAGG's annual (10-Ks) and quarterly (10-Qs) reports and a proxy statements in 2012, in violation of Item 403(b) of Regulation S-K. (*See* Deriv. Compl. ¶¶ 10, 88-92, 97-100.) | **Failure to Disclose**: ZAGG failed to disclose the number of shares pledged as security by named executive officers, directors and director nominees in ZAGG's annual (10-Ks) and quarterly (10-Qs) reports and proxy statements in 2011 and 2012, in violation of Item 403(b) of Regulation S-K. (*See* Class Action Compl. ¶¶ 39-42; 49-60.) |
| **December Margin Call**: "Pedersen's reckless behavior manifested itself on December 21, 2011, when Pedersen was forced to sell approximately $2.6 million worth of ZAGG stock to satisfy a margin call."  (Deriv. Compl., ¶ 5.) | **December Margin Call**: "these acute risks began to materialize on December 21, 2011, when Defendant Pedersen was forced to sell nearly $2.6 million worth of ZAGG stock to satisfy a margin call."  (Class Action Compl., ¶ 6.) |
| **Form 4**: the Company initially concealed the true reason for Pedersen's sale of shares by issuing a Form 4 that informed shareholders that Pedersen sold stock to meet an "immediate financial obligation."  (Deriv. Compl., ¶¶ 5, 75, | **Form 4**: the Company initially concealed the true reason for Pedersen's sale of shares by issuing a Form 4 that informed shareholders that Pedersen sold stock to meet an "immediate financial obligation."  (Class Action Compl., |

| | |
|---|---|
| 77, 78.) | ¶¶ 6, 7, 63.) |
| **Continued Margin Position**: "Individual Defendants failed to inform shareholders . . . that Pedersen had more than 1.7 million additional ZAGG shares posted as collateral and similarly subject to margin calls."  (Deriv. Compl., ¶ 5.) | **Continued Margin Position**: the "Company failed to disclose the critical fact that Pedersen had more than 1.7 million additional shares posted as collateral, which were similarly subject to margin calls."  (Class Action Compl., ¶ 7.) |
| **Forming the Succession Plan**: "Realizing that Pedersen had recklessly put his position as CEO and Chairman of the Board, as well as the future of the Company, at risk at the expense of Zagg shareholders, the Individual Defendants began a succession plan beginning in December of 2011 to remove Pedersen as CEO and Chairman and to appoint Defendant Randall Hales as the successor CEO and Defendant Cheryl Larabee as the successor Chairperson.  (Deriv. Compl., ¶¶ 6, 80-83.) | **Forming the Succession Plan**: "Realizing that Pedersen had recklessly put his position as Chairman and CEO, as well as the future and control of the Company which he founded at risk, the Company began an undisclosed succession plan beginning in December of 2011 to remove Pedersen and Chairman and CEO, and to appoint Defendant Hales as the successor CEO, and Defendant Larabee as Chairman. (Class Action Compl., ¶ 7, 31-33.) |
| **Hiding the Succession Plan**: The succession plan "was purposefully concealed from ZAGG shareholders."  (Deriv. Compl., ¶¶ 6, 10..) | **Hiding the Succession Plan**: The succession plan was concealed from shareholders.  (Class Action Compl., ¶¶ 7, 8, 9.) |
| **August Margin Call and Fallout**: The secret succession plan "came to light" on August 17, 2012 when the Company issued a press release announcing Pedersen's immediate resignation. Plaintiffs secret succession plan argument also relies on Hales statements at an August 28, 2012 conference call that Pedersen's departure "was entirely related to the margin call situation that started last December and unfortunately surfaced again two weeks ago." (Deriv. Compl., ¶¶ 85-86.) | **August Margin Call and Fallout**: The secret succession plan "came to light" on August 17, 2012 when the Company issued a press release announcing Pedersen's immediate resignation. Plaintiffs secret succession plan argument also relies on Hales statements at an August 28, 2012 conference call that Pedersen's departure "was entirely related to the margin call situation that started last December and unfortunately surfaced again two weeks ago." (Class Action Compl., ¶¶ 37, 85-86.) |
| **Basis for Claims**: as the basis for all of their claims, that "Individual Defendants caused ZAGG to issue false and misleading public statements" that concealed the following information:<br>• "Pedersen had placed more than 48% of his ZAGG shares as collateral on margin, thereby jeopardizing his future";<br>• "as a result of Pedersen's reckless actions, the Company began a secret succession plan to replace him";<br>• "Pedersen's pledges posed a material risk to the market price and stability of | **Basis for Claims**: as the basis for all claims, that the "Company" made false and misleading statements regarding the ZAGG, and/or failed to disclose that:<br>• "Pedersen had placed more than 48% of his Zagg ownership as collateral on margin, jeopardizing his future with the Company";<br>• "as a result of Pedersen's deliberately reckless actions, the Company began a secret succession plan to replace him with Defendant Hales as CEO and to replace him with Defendant Larabee as Chairman"; |

| | |
|---|---|
| ZAGG stock";<br>• "the Company did not maintain effective internal controls over financial reporting";<br>• "as a result of the above, the Company's financial statements were false and misleading at all relevant times."<br>(Deriv. Compl., ¶¶ 7, 109, 121.) | • "Pedersen's pledges posed a material risk to the market price and stability of ZAGG stock, arising from a potential margin call";<br>• "as a result, the Company's financial statements were false and misleading at all relevant times."<br>(Class Action Compl., ¶ 9.) |
| **Proxy Claim**. Asserts a claim for violation of Section 14(a) based on the failure to disclose Pedersen's stock pledges and the succession plan in the proxy statement issued on April 27, 2012. | **Proxy Claim**. Asserts a claim for violation of Section 14(a) based on the failure to disclose Pedersen's stock pledges and the succession plan in the proxy statements issued on May 2, 2011 and on April 27, 2012. |

## IV.    The Court Dismissed the Class Action Complaint.

In the Memorandum Decision and Order in the Class Action, the Court determined the above facts failed to state a claim under Sections 10(b), 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rules 10b-5 and 14a-9 promulgated thereunder. (Memorandum Decision and Order, p. 6, 10-15, RJN, Ex. A.)  With respect to Pedersen's stock pledges, the Court concluded that, while Pedersen clearly knew of his margin accounts, the Class Plaintiffs failed to plead any facts to establish he knew that the non-disclosure of his margin accounts would mislead investors.  (*Id.*, p. 10.)  The Court further found that the Class Plaintiffs failed to plead any particularized facts to show that the alleged failure to disclose Pedersen's stock pledges directly caused the harm alleged by Class Plaintiffs under Section 14(a).  (*Id.*, pp. 14-15.)

The Court also determined that that Plaintiffs had failed to plead a plausible claim for relief based on the purported secret succession plan.  In a ruling that is equally applicable to the Derivative Complaint, the Court observed the Class Plaintiffs strung together three innocuous facts to fashion their alleged secret succession plan:

> First, that Hales was hired to be in charge of "day to day operations."
> Second, that Hales eventually took over as interim-CEO once Pedersen
> had relinquished the position. Third, that Hales stated that Pedersen
> stepped down because of the margin call situation.

(*Id.,* p. 12.)  The Court determined that these facts did not sufficiently demonstrate that a secret

succession plan existed and commented:

> Plaintiffs fail to acknowledge that day-to-day operations are typically the
> responsibility of any company's chief *operating* officer. Plaintiffs also fail
> to account for the facts that Hales was hired nine days *prior* to Pedersen's
> first margin call, or that Pedersen continued to serve as CEO for more than
> nine months after Hales was hired.  . . . While the replacement of one
> person by another is a necessary component to a secret succession plan, it
> is by no means sufficient. If it were, any shuffling of executive positions
> would immediately become suspect, and could become the subject of a
> lawsuit.

(*Id.*)  Based on these determinations, the Court concluded that Class Plaintiffs had not

successfully alleged a secret succession plan.   The Court thus dismissed the Class Action

Complaint in its entirety.

## APPLICABLE LAW

### I.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed if it fails to state a claim upon which relief can be granted.  In order to adequately state a claim, factual allegations in the complaint "must be enough to raise a right to relief above the speculative level" and must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  A claim generally has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although a court considering a Rule 12(b)(6) motion to dismiss must accept all well-pleaded factual allegations in a complaint as true, it need not give any effect to legal conclusions, deductions or unsupported characterizations couched as fact. *See, e.g., Iqbal,* at 678.

Furthermore, the nature and specificity of allegations will vary based on context.  Here, as set forth below, Plaintiffs must also meet heightened pleading standards for certain of their claims.  Specifically, (a) Plaintiffs' Section 14(a) claim is subject to the heightened pleading requirements of Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA"); (b) Plaintiffs' claim for breach of fiduciary duty is subject to the particularity requirements of Rule 9(b) and must allege the additional element of scienter; and (c) Plaintiffs must plead demand futility with particularity under Rule 23.1.

### II.   CHOICE OF LAW

The laws of the following jurisdictions will apply to the claims and defenses at issue:

1.   *Plaintiffs' Section 14(a) Claim.* Plaintiffs' claim for violation of Section 14(a) arises under and is governed by federal law.  *See* 15 U.S.C. § 78n(a); 17 C.F.R. § 240.14a-9(a);

15 U.S.C. §§ 78u-4(b)(1), (2).

2. *Plaintiffs' Pendant State Law Claims.* Plaintiffs' three state-law derivative claims against Pedersen—for breach of fiduciary duty, unjust enrichment and waste of corporate assets—are governed by Nevada law under the "internal affairs doctrine."  "'The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders . . . .'"  *Newsome v. Gallacher,* 722 F.3d 1257, 1272 n. 6 (10th Cir. 2013) (ellipses in original) (citation omitted); *see also, e.g., In re Verisign Inc. Derivative Litig.,* 531 F.Supp.2d 1173, 1215 (N.D.Cal.2007) (observing the doctrine covers all claims that "implicate the Company's internal affairs," including claims for "breach of fiduciary duty," "unjust enrichment," and "waste").  "That doctrine provides that the rights of a shareholder in a foreign company (including the right to sue derivatively) are determined by the law of the place where the company is incorporated." *In re BP p.l.c. Derivative Litig.*, 507 F. Supp. 2d 302, 307-08 (S.D.N.Y. 2007) (quoting *Atherton v. FDIC*, 519 U.S. 213, 224, (1997)).  Since ZAGG is incorporated in Nevada, Nevada law will apply to Plaintiffs' state-law derivative claims. In most contexts, Nevada follows Delaware law in corporate governance matters where Nevada has not developed its own substantive case law.[5]

3. *Demand Futility.*  Federal courts apply the standards of Rule 23.1 based on the substantive law of the state of incorporation.  *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90 (1991). A shareholders ability to sue derivatively is governed by the law of the state of incorporation, here, Nevada.  Nevada follows Delaware law governing whether a derivative plaintiff is excused from making a board demand before suing derivatively. *See Shoen, 137 P.3d*

---

[5] *See, e.g. Shoen v. SAC Holding Corp.*, 137 P.3d 1171, 1181-82 (Nev. 2006) (Nevada follows Delaware law in evaluating claims of demand futility).

*at 1182-83.*

## ARGUMENT

## I.     PLAINTIFFS HAVE INSUFFICIENTLY PLED DEMAND FUTILITY.

Because the Plaintiffs purport to bring this action derivatively, they must satisfy the

pleading requirements of Rule 23.1 of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P.

23.1(a).  "The difference between the 12(b)(6) and 23.1 standards is in the level of detail

demanded of the plaintiff's allegations."  *Seni v. Peterschmidt,* No. 12–cv–00320–REB–CBS,

2014 WL 561618, *4 (D. Colo., February 12, 2014) (citation omitted).

Rule 23.1 requires, *inter alia,* Plaintiffs to allege the action is not "collusive . . . to confer

jurisdiction" upon the court, and to "allege with particularity the efforts, if any, made by the

plaintiff to obtain the action the plaintiff desires from the directors . . . and the reasons for the

plaintiff's failure to obtain the action or for not making the effort."  Fed. R. Civ. P. 23.1(b)(2),

(3).  A derivative plaintiff must also demonstrate she will adequately and fairly represent the

interests of "shareholders or members who are similarly situated in enforcing the right of the

corporation or association." Rule 23.1(a).

Derivative Plaintiffs do not include any allegations that (1) the action is not a collusive

action to confer jurisdiction that the court or (2) Lead Plaintiffs will adequately and fairly

represent the interests of similar situated shareholder in enforcing the right of the corporation.

This alone is fatal and requires summary dismissal.

In addition, Plaintiffs admit they made no effort to make the board demand required by

subsection 23.1(b)(3)(A).  (Compl. ¶ 138.) Plaintiffs must therefore plead particularized facts

establishing that demand would have been futile.  *Louisiana Mun. Police Employees' Retirement*

*System v. Hesse*, No. 12 CIV 4017, 2013 WL 4516427, *5 (S.D.N.Y. July 26, 2013) ("Rule 23.1

is a rule of pleading that creates a federal standard as to the specificity of facts alleged with regard to efforts made to urge a corporation's directors to bring the action in question.  <u>It is not satisfied by conclusory statements or mere notice pleading</u>." (Emphasis added)).

A.   **Plaintiffs Must Plead Particularized Facts Rebutting the Presumption that ZAGG's Directors Are Disinterested and Independent Actors.**

As indicated above, Nevada courts look to Delaware law for guidance on demand futility and corporate governance issues.  *See Shoen Supra.*  Under Delaware law, "the entire question of demand futility is inextricably bound to issues of business judgment and the standards of that doctrine's applicability." *Taylor v. Kissner*, 893 F. Supp.2d 659, 665 (D. Del. 2012) (quoting *Aronson v. Lewis,* 473 A.2d 805, 812 (Del. 1984) (overruled on other grounds)).  "[T]he key principle upon which this area of jurisprudence is based is that the directors are entitled to a presumption that they were faithful to their fiduciary duties." *Beam v. Stewart*, 845 A.2d 1040, 1048 (Del. 2004).  Plaintiffs bear the burden to overcome this presumption with particularized facts showing a reasonable doubt that a majority of the directors that would be considering the demand were disinterested and independent.  *Id.*  "A director will be considered unable to act objectively with respect to a presuit demand <u>if he or she is interested in the outcome of the litigation or is otherwise not independent</u>." *Id.* at 1049.  (Emphasis added).

There are two possible standards for evaluating the futility of making a board demand. If a plaintiff challenges a conscious board decision to act or not to act with respect to a <u>particular transaction</u>, the plaintiff must plead particularized facts creating a reasonable doubt that (1) the directors are disinterested and independent regarding the challenged transaction, or (2) the challenged transaction was a valid exercise of business judgment.  *See Aronson v. Lewis*, 473 A.2d 805 (Del. 1984).  If the plaintiff does <u>not</u> challenge a conscious board decision triggering the protections of the business judgment rule, "the demand futility analysis considers only

4

whether a majority of the directors had a disqualifying interest in the [demand] matter or were otherwise unable to act independently at the time the complaint was filed." *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993); *Shoen*, 137 P.3d at 1183.

Thus, where a plaintiff is not challenging a board action, the inquiry is "whether the board that would be addressing the demand can impartially consider its merits without being influenced by improper considerations, such that it could properly exercise[ ] its independent and disinterested business judgment in responding to a demand." *Shoen,* 137 P.3d at 1183 (citing *Rales*, 634 A.2d at 934).

**B.    Demand Cannot Be Excused for Count I (Section 14(a)), Count III (Unjust Enrichment), Count IV (Waste of Corporate Assets, or Count V (Insider Trading) Where Plaintiffs Make Do Not Plead With Particularity Why Demand Would Be Futile As to Each of These Claims.**

Demand futility must be determined on a claim-by-claim basis. *MCG Capital Corp. v. Maginn,* No. 4521-CC, 2010 WL 1782271, at *18 (Del. Ch. 2010).  The fact that demand is futile as to one claim does not mean it is futile as to the others.  *Id*.

The Complaint brings claims against the Individual Defendants for Section 14(a) of the Exchange Act, breach of fiduciary duty, unjust enrichment, and waste of corporate assets (Compl. ¶¶ 177-194), and a claim for insider trading against Ueyema.  (*Id*. at ¶¶ 195-200.)  Yet, the section entitled "Derivative and Demand Futility Allegations" does not address any of Plaintiffs' claims other than the breach of fiduciary duty claim.  (*Id*. at ¶¶ 135-165.)  The failure to establish demand futility for the other causes of action is fatal because Plaintiffs cannot proceed in this derivative action on causes of action for which there has been no board demand and no allegations excusing the demand requirement.  *Id*.  Plaintiffs' effort to excuse demand as to the "action" generally (*see, e.g., id*. at ¶¶ 135-165), is not permitted.  *Id*.

### C.      Plaintiffs' Muddled Futility Allegations Fail to Establish that Demand is Excused Under *Aronson*.

Plaintiffs generally allege that three members of ZAGG's board—Hales, Larabee and Ekstrom (collectively, the "Director Defendants")—either participated in the alleged wrongs or consciously or recklessly ignored that ZAGG's statements were false and misleading.  (Compl. ¶ 141.)[6]  However, beyond these generalizations, it is difficult to discern what Plaintiffs' theory of futility is from their muddled allegations.

At times Plaintiffs appear to challenge the directors' conscious decisions—their exercise of business judgment—without demonstrating bias.  For example, Plaintiffs allege the Board authorized the Individual Defendants' compensation (Compl. ¶¶ 15, 186, 193), and Pedersen's compensation and Consulting Agreement (*id*. at ¶¶ 13, 53, 78, 114, 175, 188).  This implies the existence of a conscious board decision under *Aronson*.  However, Plaintiffs fail to allege particularized facts with respect to these specific transactions, such as "when [these] decisions were made, what the contours of [these] decisions were, and what, if any, research and information were part of their deliberations."  *See Louisiana*, 2013 WL 4516427, at *7.  Plaintiffs have thus failed to provide the specificity necessary to allege demand futility relating to conscious board decisions.  *Id*.

For the majority of Plaintiffs' futility allegations, however, Plaintiffs appear to rely on a purported lack of impartiality by the Board to consider the demand itself.  This falls under the *Rales* test.  As demonstrated below, Plaintiffs have also failed to plead any particularized facts to excuse demand under this inquiry

---

[6] "[O]n an even-numbered board, the vote of disinterested and independent directors may be blocked by one-half of the board's total members."  *Shoen*, 137 P.3d at n. 62. ZAGG's Board consisted of 6 members at the time this action was originally initiated.  (Compl. ¶ 139.)

**D.** **Plaintiffs' Remaining Futility Allegations Fail to Establish that Demand is Excused Under *Rales*.**

The Plaintiffs challenge the Director Defendants' inability to impartially consider a Board demand under the *Rales* test, because they face a substantial likelihood of liability for the claims at issue in the demand and are therefore not disinterested, and are not independent because they control ZAGG and are beholden to one another. *See Shoen*, 137 P.3d at 1182-85; (Compl. ¶¶ 139-140, 152, 157.)

**1.** **Plaintiffs Fail to Plead that the Director Defendants Are Interested By Because They Face a Substantial Likelihood of Liability in this Case.**

"[T]o show interestedness [under *Rales*], a shareholder must allege that a majority of the board members would be 'materially affected, either to [their] benefit or detriment, by a decision of the board, in a manner not shared by the corporation and the stockholders." *Shoen*, 137 P.3d at 1183. "[I]nterestedness because of potential liability can be shown only in those <u>rare cases []</u> <u>where defendants' actions were so egregious that a substantial likelihood of director liability</u> <u>exists.</u>" *Id*. at 1184. (Emphasis added) (internal citation and quotation omitted).

Here, Plaintiffs allege the Director Defendants are not disinterested because they each face a substantial likelihood of liability as a result of their alleged "cover-up for Defendant Pedersen and their secretive succession plan[.]" (Compl. ¶ 140.) [7]

However, Nevada statutes and ZAGG's Articles of Incorporation limit directors and officers from personal liability for breaches of fiduciary duty unless they acted with scienter or

---

[7] Indeed, "because plaintiffs essentially allege that the [board members] knew or should have known of the challenged acts, at times through their participation therein, but nonetheless failed to prevent or remedy the wrongs . . . [and that] a majority of the board intentionally signed false and misleading public disclosure statements designed to conceal the substance of the transactions from [the shareholders] . . . for the most part, appellants have alleged a failure to properly supervise or a willful disregard of duties, they do not challenge any board-considered business decision. Therefore, the *Rales* test applies." *Shoen*, 137 P.3d at 1184-85.

committed fraud.[8]  *See* Nev. Rev. Stat. 78.138*; Taylor*, 893 F.Supp.2d at 666, 669 (plaintiff had to allege defendants acted with scienter to plead a substantial likelihood of liability based on corporate charter containing identical exculpatory provisions).

There is not a single allegation in the Complaint that states or even implies that ZAGG's directors acted with the requisite scienter or committed fraud.  Plaintiffs instead rely entirely on conclusory allegations wholly insufficient to show a substantial likelihood of liability.  *Wood v. Baum*, 953 A.2d 136, 142 (Del. 2008) (finding plaintiffs failed to show demand futility where they did "not plead with particularity the specific conduct in which each defendant 'knowingly' engaged, or that the defendants knew that such conduct was illegal").[9]  For example, the Complaint alleges that simply because Hales, Larabee and Ekstrom were on the Board at the time Pedersen's pledged shares in a margin account, they must have knowingly covered up Pedersen's margin account. (Compl. ¶ 144, 149-15, 152.)  Notably, in the Memorandum Decision and Order dismissing the Class Action, this Court expressly rejected this very effort to

---

[8]  (*See* RJN, Ex. D) (Article IV [Limitation on Director Liability] states, in pertinent part: **"**[N]o director or officer of the Corporation shall be liable to the Corporation or to its stockholders for damages for breach of fiduciary duty as a director or officer. A director of the Corporation shall not be personally liable to the Corporation or to its shareholders for monetary damages for breach of fiduciary duty as a director: except that this provision shall not eliminate or limit the liability of a director to the Corporation or to its shareholders for monetary damages otherwise existing for (i) <u>any breach of the director's duty of loyalty to the Corporation or to its shareholders</u>; (ii) <u>acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law</u>; (iii) acts specified in Section 78.300 of the Nevada General Corporation Law; or (iv) <u>any transaction from which the director directly or indirectly derived any improper personal benefit</u>." (Emphasis added).)

[9] *See also Louisiana*, 2013 WL 4516427, at *8 ("Plaintiffs' unsupported allegations about the illegality of the [alleged wrongdoing] and the Directors' knowledge thereof are inadequate to establish demand futility"); *Fink v. Komansky*, No. 03 Civ. 0388(GBD), 2004 WL 2813166, at *4 (S.D.N.Y. Dec. 8, 2004) (where the "entire lawsuit is based upon the allegation that someone on [the] board of directors or on the senior executive staff must have known or should have known of the [company's unlawful transactions], these "conclusory allegations of fact or law not substantiated with specific facts are insufficient to support demand futility").

impute knowledge without particularized facts. (*See* Memorandum Decision and Order, pp. 10-11.)

Moreover, to be clear, Pedersen's margin account was <u>not</u> illegal: "Corporate executives commonly secure personal loans with shares of stock[.]" *In re Dynegy, Inc. Sec. Litig.*, 339 F.Supp.2d 804, 899 (S.D. Tex. 2004). Plaintiffs have not alleged that any of the Director Defendants were aware of the provisions of Reg. S-K Item 403(b) that Plaintiffs claim would have required disclosure of the margin account. (Compl. ¶ 88.) Thus, at most Plaintiffs have alleged the Director Defendants, apparently unknowingly, violated an SEC disclosure regulation.

Indeed, Plaintiffs do not allege any particularized facts to even suggest that reporting failures were anything more than mere oversight of an obscure reporting obligation that ZAGG and its disclosure counsel had not previously encountered. Instead, Plaintiffs allege:

1. Plaintiffs devote 21 paragraphs alleging "past" incidents of misconduct to ostensibly imply that the Individual Defendants are bad people and act in bad faith. (Compl. ¶¶ 52-73.) Plaintiffs admit that these unsubstantiated allegations occurred "in the past" (*id.* at ¶ 53) are therefore totally unrelated to Pedersen's margin situation or any of the claims at issue during the "Relevant Period" in the Complaint.[10]

2. Larabee and Ekstrom must have knowingly participated in a cover-up of Pedersen's margin account because they sat on ZAGG's Audit Committee and Nominating and Corporate Governance Committee during the Relevant Period. (Compl. ¶¶ 149-150.)[11]

---

[10] *See South*, 62 A.3d at 17 (citing *In re Dow Chem. Co. Deriv. Litig.,* 2010 WL 66769, at *13 (Del. Ch. Jan. 11, 2010) (declining to draw inference that prior, unrelated misconduct supported inference that board should have been on notice of potential wrongdoing); *In re Citigroup, Inc. S'holder Deriv. Litig.,* 964 A.2d 106, 129 (Del. Ch. 2009) (rejecting the contention that "alleged, prior, unrelated wrongdoing would make directors 'sensitive to similar circumstances '"). Indeed, these allegations constitute nothing more than "immaterial, impertinent [and] scandalous matter" that should be disregarded or stricken by the Court pursuant to Fed. R. Civ. P. 12(f).

[11] These "guilt by board position" arguments have been soundly rejected as supporting an inference of scienter or wrongdoing. *See, e.g., South*, 62 A.3d at 17 (rejecting plaintiffs' argument that members of the Safety Committee "must have known and consciously ignored the problems [at the mine] because they were charged with overseeing safety"). "As numerous Delaware decisions make clear, an allegation that the underlying cause of a corporate

3.     Plaintiffs allege that the Director Defendants failed to maintain adequate systems of internal reporting and financial controls (Compl. ¶ 156) and that ZAGG's Form 8-K from January 9, 2012 purportedly admitted to such weaknesses. (*Id*. at ¶ 142.)[12]

4.     Hales, Larabee and Ekstrom were involved in approving, reviewing or otherwise signing off on ZAGG's allegedly misleading financial statements (Compl. ¶ 154) and therefore they allegedly knew the statements were misleading leading to a substantial likelihood of personal liability.[13]

These allegations are not sufficient to plead either participation in, or knowledge of, false, fraudulent, or intentional illegal conduct, which is required to plead, with particularity, a substantial likelihood of personal liability being imposed against the Director Defendants. Rather, Plaintiffs' allegations fit the mold of prior lawsuits where courts found the allegations insufficient to state a viable cause of action. *See, e.g., South v. Baker*, 62 A.3d 1 (Del. 2012); *Louisiana*; *Baum*, *supra*.

In sum, Plaintiffs do not allege a substantial likelihood of liability against any of the

---

trauma falls within the delegated authority of a board committee does not support an inference that the directors on that committee knew of and consciously disregarded the problem for purposes of Rule 23.1." *Id*. (citation omitted); *see also In re Goldman Sachs Gp., Inc. S'holder Litig.,* 2011 WL 4826104, at *22–23 (Del.Ch. Oct. 12, 2011) (same).

[12] This argument is similarly misplaced. *See Taylor*, 893 F. Supp.2d at 670 (company's 10-K that warned investors of problems with "internal controls over financial reporting," some of which were still being actively addressed at that time, "does not raise the specter of dishonesty or bad faith; to the contrary, it demonstrates an approach tilted toward full disclosure of possible accounting problems within the company"). Furthermore, *Taylor* found the 10-K irrelevant because it disclosed problems that were unrelated to the injuries alleged by Plaintiffs. *See id*. at 670-671 (disclosure warning of internal weaknesses did not indicate substantial likelihood of liability because "[n]othing in the disclosure is specifically alleged to be connected with actual losses suffered by shareholders[.]"). Similarly, Plaintiffs do not allege that any of the purported weaknesses in the 8-K caused their alleged losses.

[13] *See, e.g., Local 295/Local 851 IBT Employer Grp. Pension Trust & Welfare Fund v. Fifth Third Bancorp*., 731 F.Supp.2d 689, 725 (S.D. Ohio 2010) (holding that "Sarbanes–Oxley certifications are not probative of scienter" because "[i]n order for a Sarbanes–Oxley certification to establish scienter, the complaint must allege facts demonstrating that the defendant knew or should have known that the report contained false statements").

Director Defendants because they rely on irrelevant, speculative and conclusory allegations to imply that illegal conduct occurred. They further fail to satisfy the heightened burden to plead scienter with respect to each Director Defendant.  For these reasons, Plaintiffs have failed to show that a majority of ZAGG's Board was so interested in the outcome of this litigation that they could not impartially consider a demand.

> **2.     Plaintiffs Fail to Plead with Particularity That The Director Defendants Were Controlled By or Beholden to Any Other Interested Director.**

Under both *Aronson* and *Rales*, "directors' independence can be implicated by particularly alleging that the directors' execution of their duties is unduly influenced, manifesting a direction of corporate conduct in such a way as to comport with the wishes or interests of the [person] doing the controlling." *Shoen*, 137 P.3d at 1183 (internal quotations and citations omitted).  Specifically, "[a] lack of independence also can be indicated <u>with facts that show</u> that the majority is beholden to directors who would be liable or for other reasons are unable to consider a demand on its merits, for directors' discretion must be free from the influence of other interested persons."  *Id*.  (Emphasis added).  Plaintiffs do not meet this standard.

Plaintiffs' repeated averments that the Director Defendants' independence is compromised because they are not in a position to sue themselves, or one another, is erroneous. *See Louisiana*, 2013 WL 4516427, at * 7 ("As an initial matter, assertions that demand is futile because Defendants would be forced to sue themselves and each other have been routinely rejected under Delaware law.") (citing *La. Mun. Police Employees Ret. Sys. v. Pandit*, No. 08-Civ.-7389(LTS)(RLE), 2009 WL 2902587, at *8 (S.D.N.Y. Sept. 10, 2009) ("[T]his 'bootstrap' argument that demand is excused because defendants would have to sue themselves 'thereby

placing the conduct of the litigation in hostile hands and preventing its effective prosecution' has long been made to and dismissed by courts.") (quoting *Aronson,* 473 A.2d at 818)).

Plaintiffs also allege that Hales and Larabee are not independent from one another because they serve on the board of another company (Compl. ¶ 158(a)), that Ekstrom is beholden to Pedersen (who at the time of filing or presently was not, on the Board or employed by ZAGG) based on a real estate transaction by Pedersen three degrees removed from Ekstrom (*id*. at ¶ 158(b)), and that Hales and Ekstrom attended the same university as Pedersen, and must "therefore have longtime friendships with each other and Pedersen."  (*Id*. at ¶ 158(c).)[14] "Allegations of mere personal friendship or a mere outside business relationship, standing alone, are insufficient to raise a reasonable doubt about a director's independence."  *Beam*, 845 A.2d at 1050.  Rather, the relationship must be of a "bias-producing nature."  *Id*. at 1050.

Indeed, "[t]o create a reasonable doubt about an outside director's independence, a plaintiff must plead facts that would support the inference that because of the nature of a relationship or additional circumstances other than the interested director's stock ownership or voting power, the non-interested director would be more willing to risk his or her reputation than risk the relationship with the interested director." *Beam*, 845 A.2d at 1052.  None of the allegations in the Complaint plead with particularity a reasonable basis to believe that Hales, Ekstrom or Larabee were <u>beholden</u> to Pedersen, who is no longer in a position to exercise any control or influence over their continued employed or compensation, or one another. To the contrary, the allegations in the Complaint indicate all three ousted Pedersen from his position as CEO and Board member in August 2012.

---

[14] Using the same logic, the Court would also have a longtime friendship with these Defendants based on having graduated from Brigham Young University.

Finally, Plaintiffs' allegation that the possible existence of an unidentified insurance policy, which, in turn, "may" eliminate director coverage for direct actions brought by the company or contain an "insured-versus-insured exclusion" (Compl. ¶ 162), is abject speculation that purports to write hypothetical exclusions into presumed insurance policies. Even if this speculative pleading were sufficiently particular, which it is not, it too is legally irrelevant. *See Louisiana*, 2013 WL 4516427, at *7 ("Similarly, the existence of an "insured vs. insured" exclusion to Defendants' liability insurance policies, on its own, does not create reasonable doubt as to whether the Directors were disinterested." (quotations and citations omitted)).

In sum, Plaintiffs' attempts to plead demand futility by overwhelming the Court with voluminous, but factually vacuous, allegations fall far short of meeting the stringent and particularized pleading requirements of Rule 23.1 and Nevada and Delaware law. Consequently, demand is not excused and Plaintiffs lack standing to maintain this action.

## III. PLAINTIFFS HAVE FAILED TO ALLEGE SUFFICIENT FACTS TO MEET FEDERAL PLEADING STANDARDS ON THEIR CLAIMS.

### A. Plaintiffs Fail to State a Claim under Section 14(a) of the Exchange Act.

"The PSLRA sets forth the pleading standards for [Plaintiffs'] § 14(a) claim. The PSLRA requires that the complaint specify each statement that is alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made upon information and belief, all facts with particularity upon which that belief is formed." *Fisher v. Kanas*, 467 F. Supp. 2d 275, 281 (E.D.N.Y. 2006) (quoting *Bond Opportunity Fund v. Unilab Corp.,* No. 99 Civ. 11074, 2003 WL 21058251, at *3 (S.D.N.Y. May 9, 2003) (citing 15 U.S.C. § 78u–4 (b)(1)).

As indicated above, Plaintiffs' Section 14(a) claim is premised on the same factual basis as the Section 14(a) claim in the Class Action and therefore fails based on this Court's prior

dismissal of this cause of action in the Class Action.[15]   It additionally fails because it is not

sufficiently pled to meet the particularity requirements of the PSLRA.[16]

To successfully plead a claim under Section 14(a), Plaintiffs must show that (1) a proxy

statement contained a material misrepresentation or omission, which (2) caused plaintiff's injury,

and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation

materials, was 'an essential link' in the accomplishment of the transaction. *See Mills v. Elec.*

*Auto–Lite Co.,* 396 U.S. 375, 384–85 (1970).

Plaintiffs allege the Proxy Statement violated Item 403(b) of Regulation S-K, which

"requires disclosure of the number of shares pledged as security by named executive officers,

directors, and director nominees." (Compl. ¶¶ 169, 88.)[17]   Plaintiffs must plead with

---

[15]     Re-litigation of this claim is barred by the doctrine of *res judicata* as a result of this
Court's dismissal of the Section 14(a) claim in the Class Action.  "The doctrine of res judicata,
or claim preclusion, will prevent a party from re-litigating a legal claim that was or <u>could have
been</u> the subject of a previously issued final judgment." *MACTEC, Inc. v. Gorelick,* 427 F.3d
821, 831 (10th Cir.2005) (emphasis added).  Res Judicala applies here because (a) the Court's
ruling constituted a final judgment on the merits, *see Lowery v. Utah,* No. 2:05CV884 TC, 2006
WL 2868398, *2 (D. Utah, October 4, 2006); (b) the claim is the same (Section 14(a)) and is
based on the same alleged omissions in the Proxy Statement; and (c) the Derivative Plaintiffs
were parties to the action or in privity therewith because ZAGG, on whose behalf Plaintiffs
purport to bring these claims and who is the real party in interest, was a party to that action and
asserted that the same underlying conduct failed to state a Section 14(a) claim. *See* Restatement
(Second) of Judgments § 59(2) (1982).  This claim is thus barred by *res judicata.*

[16]     Indeed, Plaintiffs' Section 14(a) claim is so vaguely asserted that it is difficult to tell
whether it purports to assert a derivate claim on behalf of ZAGG, or a direct claim on behalf of
the "Lead Plaintiffs" themselves.  (*See* Compl. ¶ 93, 95, 174—generally asserting the allegedly
misleading Proxy Statement harmed the stockholders by depriving them of a fully informed vote
regarding the election of ZAGG's board of directors).  Such a lack of specificity does not
approach the heightened pleading requirements of the PSLRA, buttresses the conclusion that this
claim is precluded by the dismissal of the Class Action, and also calls into question whether this
claim even belongs in this action.

[17]     Count I also claims that the Individual Defendants failed to disclose the secret succession plan
and that Pedersen had ceded much of his day-to-day business decisions to Hales in the Proxy
Statement.  (Compl. ¶ 170.)   These allegations should specifically be disregarded because they

particularity "a showing that the defendant caused the loss for which the plaintiff seeks to recover damages." 15 USC § 78u-4(b)(4). To do so, a plaintiff must prove both economic loss and proximate causation. *Dura Pharm. Inc. v. Broudo*, 544 U.S. 336, 346 (2005).

First, the Complaint does not clearly articulate or identify any economic loss sustained as a result of the Proxy Statement. Plaintiffs merely allege, "[a]s a direct and proximate result of these Defendants' wrongful conduct, the Company misled and/or deceived its shareholders." (Compl. ¶ 174) (emphasis added.) This is inadequate. *See Fisher*, 467 F.Supp.2d at 284 (rejecting Section 14(a) claim because plaintiff failed to allege she suffered any monetary injury as a result of the proxy statements).

Plaintiffs also allege that "Defendant Pedersen received a personal financial benefit from the false and misleading Proxy Statement because he received a bonus and restricted stock for 2011, which was discussed in the Proxy Statement." (Compl. ¶ 175.) However, the alleged Reg. S-K violation in the Proxy cannot have caused Pedersen's receipt of these bonuses because the

---

are not tied to any express disclosure required by the securities laws or regulations and instead fall within the purview of state corporate affairs. "Corporations are creatures of state law, and investors commit their funds to corporate directors on the understanding that, except where federal law *expressly* requires certain responsibilities of directors with respect to stockholders, state law will govern the internal affairs of the corporation." *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 478 (1977). Courts reject Section 14(a) claims premised on the non-disclosure of misconduct or breach of the fiduciary duty of directors that are not tied to a specific disclosure required by federal securities laws. *See Koppel v. 4987 Corp.*, 167 F.3d 125, 127 (2d Cir. 1999) ("We have long recognized that no general cause of action likes under § 14(a) to remedy a simple breach of fiduciary duty."); *In re Fleet/Norstar Sec. Litig.*, CIV. A. 90-0173B, 1991 WL 185171 (D.R.I. June 5, 1991) (rejecting Section 14(a) claim alleging failure to disclose defendants' breaches of fiduciary duty or mismanagement because breaches of fiduciary duty or mismanagement do not state a cause of action under Section 14(a)). Moreover, the secret succession plan is wholly unsubstantiated and has already been deemed non-existent by this Court in the Class Action. A company is not required to disclose illusory misconduct. *Bolger v. First State Financial Services*, 759 F.Supp. 182, 194 (D. N.J. 1991) ("A company has no duty to disclose to shareholders unsubstantiated allegations."); *U.S. v. Matthews*, 787 F.2d 38, 45 (2d Cir. 1986) ("Liability under Rule 14a-9 is predicated upon a showing that an allegedly omitted fact is true.").

Proxy was issued in April of 2012.  The bonuses were paid <u>before</u> the Proxy was issued and were merely <u>discussed</u> as having already been granted for the prior year.  Compensation was not the subject of shareholder authorization in the April 2012 Proxy Statement. (*See id.*, RJN, Ex. C.)

Second, Plaintiffs cannot plead an "essential link" between the shareholder solicitation and Pedersen's 2011 compensation.  To plead an "essential link," a plaintiff must allege that "the votes for a specific corporate transaction requiring shareholder authorization . . . are obtained by a false proxy statement, and ***that transaction was the direct cause of pecuniary injury for which recovery is sought***." *Alaska Elec. Pension Fund v. Olofson*, No. 08-2344-CM, 2009 WL 1580296, at *8 (D. Kan. Jun. 3, 2009) (emphasis added).

Here, the Proxy Statement solicited votes on <u>the election of ZAGG's Board of Directors</u> (*see* Compl. ¶ 89), which did not directly cause Pedersen's receipt of a bonus or stock received in his capacity as an officer of ZAGG because, as discussed above, this remuneration was already granted to him for the year prior and was merely discussed in the Proxy Statement.  (Compl. ¶ 175, RJN, Ex. C.)  *Swanson v. Weil*, No. 11-cv-02142-WYD-KLMN, 2012 WL 4442795, at *9, n. 7 (D. Colo. Sept. 26, 2012) (no essential link where "votes solicited by the proxy were not legally required to authorize the award of the executive compensation.")[18]

---

[18] *See also Fisher*, 467 F.Supp.2d at 283 (plaintiffs failed to allege loss causation based on challenging executive compensation agreements that were "not subject to approval by the shareholders and <u>although mentioned in the proxies, were not the subject of the challenged proxies</u>," which "only concerned an election of Directors[.]") (Emphasis added).  *Fisher* specifically rejected the plaintiffs' speculation about what may or may not have happened with the election if the proxy had not been misleading as an insufficient "attenuated 'but for' causation analysis[.]"  *Id.*  *See also In re Verisign Deriv. Litig.*, 531 F.Supp.2d 1173, 1202, 1213 (N.D. Cal. 2007) (dismissing § 14(a) claim because plaintiffs failed to allege any injury suffered as a result of the allegedly misleading proxy statements as a direct result of the transaction that was at immediate issue in the proxy (election of directors)).

Moreover, Pedersen's compensation "discussed" in the Proxy Statement constituted remuneration for his service as an <u>officer</u> of ZAGG and was not at all derived from or contingent upon his former, present or future election or service on the Board, for which he received no compensation.[19] Nor do Plaintiffs allege that Pedersen's 2011 compensation was somehow subject to authorization from the Board that was to be elected in 2012.  (*See* Compl. ¶ 93.)

Plaintiffs appear to recognize the practical impossibility of an essential link or pecuniary harm, and suggest that "had such benefits [for 2011] already been awarded, they may have been clawed back by the Company." (Compl. ¶ 93.)  This statement is on its face speculative and thus cannot be the basis for a claim under the stringent standards applicable to Section 14(a) claims. In any event, the Complaint identifies no basis for ZAGG to have clawed back officer compensation based on alleged non-disclosure of the entirely legal stock pledge.  [T]he courts have been understandably loath [sic] to use Section 14(a) as a tool to redress depredations of company assets which may be logically related to a given director's fraudulent election to office, but which ***are not themselves the subject for which shareholder approval was sought***." *Kamerman v. Pakco Companies, Inc.,* No. 76 CIV. 3912, 1978 WL 1055, at *3 (S.D.N.Y. Feb. 6, 1978) (emphasis added). In sum, Plaintiffs' Section 14(a) claim fails for multiple reasons.

**B.      Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty.**

**1.      Plaintiffs' Claims for Breach Of Fiduciary Duty are Allegations of Fraud and Must Be Pleaded with Particularity in Accordance with Federal Rule  of Civil Procedure 9(b) and Must Plead Scienter.**

Plaintiffs' cause of action alleging breach of fiduciary duty is subject to the heightened pleading standard of Fed. R. Civ. P.  9(b) requiring them to plead fraud with particularity, which they have not done.  Pursuant to Nevada Revised Statutes §78.138(7), to state a viable claim for

---

[19] The Proxy Statement expressly states Pedersen received "no monetary compensation for his services as Chairman of the Board."  (Proxy Statement at p. 26, RJN, Ex. C.)

breach of fiduciary duty, a shareholder must allege that the director's "act or failure to act constituted a breach of his or her fiduciary duties" and that the "breach of those duties involved intentional misconduct, fraud or a knowing violation of the law." *In re Amerco Derivative Litig.*, 252 P.3d 681, 700 (Nev. 2011). The Nevada Supreme Court has found that because "claims of breach of the fiduciary duty are, in this instance, allegations of fraud committed by respondent officers and directors, for those causes of action, appellants must satisfy the heightened pleading requirement of [Nevada Rule of Civil Procedure] 9(b)." *Id.* Nev. R. Civ. P. 9(b), similar to Fed. R. Civ. P. 9(b), provides, in pertinent part, that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

As indicated above, ZAGG's Articles of Incorporation expressly incorporate this heightened standard, limiting director liability to the maximum extent allowed by Nevada law. (RJN, Ex. D.)  They further trackRJN, Ex. D; fn.8, above word for word the language in the Delaware Code allowing limitation of director liability. *See* 8 Del. Code § 102(b)(7). Delaware courts interpreting this language have required plaintiffs to plead acts or omissions not in good faith, or acts involving intentional misconduct or a knowing violation of the law. *Taylor v. Kissner*, 893 F. Supp. 2d 659, 669 (D. Del. 2012); *see also* 8 Del. Code § 102(b)(7). Delaware courts have further interpreted this language to require that the plaintiff plead scienter:

> [I]f directors are exculpated from liability except for claims based on 'fraudulent,' 'illegal' or 'bad faith' conduct, a plaintiff must also plead particularized facts that demonstrate that the directors acted with scienter, i.e., that they had actual or constructive knowledge that their conduct was legally improper.

*Wood v. Baum*, 953 A.2d 136, 140-41 (Del. 2008); *see also Taylor,* 893 F.Supp.2d at 669 ("Thus, [plaintiff] must allege that Director Defendants acted with scienter."). As a result, Pedersen cannot be held liable for a mere breach of the duty of care but rather plaintiffs must plead scienter and satisfy the pleading standard of Rule 9(b).

## 2.    Plaintiffs Have Not Alleged Intentional Misconduct, Fraud, or a Knowing Violation of Law and Have Not Alleged Scienter.

Count II of the Complaint does not allege, even generally, intentional misconduct, fraud, or a knowing violation of law. Stripped of its conclusory language and histrionics, the Complaint alleges only two deficiencies in Pedersen's performance as a director: (1) the corporation failed to report the amount of Pedersen's shares pledged as security as required by Reg. S-K Item 403(b) (Compl. ¶¶ 88, 92); and, (2) the corporation failed to report the secret succession plan, which coincidentally did not actually exist (*id.* at ¶ 95.) The Complaint does not specifically allege that either of these actions was done intentionally, with knowledge of the acts' illegality.

Rather, Count II alleges that Pedersen and the other Individual Defendants owed ZAGG "the duty to exercise due care and diligence in the management and administration of the affairs of ZAGG," and that "by committing the alleged act, the Individual Defendants breached their fiduciary duties." (Compl. ¶¶ 178, 181.)

The Complaint does not specifically allege whether  Pedersen or the other Individual Defendants breached any other fiduciary duties by failing to report these two items. The clearest reading of Count II suggests that the only allegedly violated duties were the duties of due care and diligence. Of course if this is true, the claim must be dismissed because of the statutory limitation of liability for Directors and the limitation included in ZAGG's Articles of Incorporation identified above. In the event Plaintiffs now argue that they intended to plead any other breach, the claim must still be dismissed because Plaintiffs have not met the obligation to plead with particularity as required by Rule 9(b).  Consequently, Count II must be dismissed.

However, even if failing to specify which duties Pedersen allegedly breached is not fatal, Plaintiffs have also failed to allege anywhere in Count II that any of Pedersen's or the other Defendants' acts were committed in bad faith, involved intentional misconduct, a knowing

violation of law, or constituted fraud. As a result, the Complaint fails to allege a breach of fiduciary duties that is actionable under Nevada law or under the limitations of liability included in the ZAGG Articles of Incorporation. *See, In re Amerco*, 252 P.3d at 700; NRS §78.138(7).

Plaintiffs have not alleged that Pedersen had actual knowledge of the requirement to report his margin account on any public filing, much less that his failure to report it constituted fraud. Nor have Plaintiffs identified any motive Pedersen had to hide his pledged shares in the Proxy Statement given that the pledges are perfectly legal and were disclosed in a publicly filed Form 144. (RJN, Ex. G.)

As to the secret succession plan, this Court has already found, in the Class Action matter, that the record contains no evidence that a secret succession plan even existed. (RJN, Ex. A, p. 12.)  As noted above in the Statement of Relevant Background Facts, the relevant allegations in this Complaint are the same as in that case, suggesting that the question of whether a secret succession plan existed should be resolved in the negative.  Again, Plaintiffs have failed to allege, and it is hard to imagine any motive Pedersen might have had to be part of a plan to oust himself from his position as CEO, much less to hide this alleged plan from the public for months only to reveal it shortly after his new term as a Board member had begun.

In short, Plaintiffs have not alleged a claim for breach of fiduciary duty that satisfies the high pleading standards set by Nevada law and the ZAGG Articles of Incorporation.  As such, their claim is not actionable. Count II should be dismissed.

###### 3.     Plaintiffs' Complaint Fails to Allege Even a Prima Facie Case For Breach of Fiduciary Duty.

Under Nevada law, there are three elements to an allegation of a breach of fiduciary duty: (1) the existence of a fiduciary relationship, (2) a breach of the fiduciary relationship by the fiduciary, (3) the breach of the fiduciary relationship resulted in damages. *Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001); *In re Amerco*, 252 P.3d at 702(stating elements of aiding and abetting the breach of a fiduciary duty); *see also Stalk v. Mushkin*, 199 P.3d 838, 843 (Nev. 2009)(explaining common law breach of fiduciary duty elements). Even if the law did not require the additional allegation of fraud, Plaintiffs' claim still fails.

To once again focus the Court on the conduct at issue here, Plaintiffs' entire case is predicated on Pedersen's entirely legal decision to pledge his personal shares to get a personal loan to use for personal reasons and the corporation's failure to disclose that personal transaction, as Plaintiffs allege it was required to do in a footnote mandated by Reg. S-K Item 403(b), an admittedly obscure SEC regulation.[20] The Complaint does not allege that Pedersen or any of the other Individual Defendants knew of the existence of Reg. S-K, much less the footnote required by Item 403(b). The Complaint does allege in the most general terms, that the Individual Defendants decided not to disclose the pledges, but without any allegation that they intentionally failed to comply with a specific disclosure requirement they did not know existed.

The Delaware courts, which Nevada looks to on virtually all corporate matters, have uniformly held that "[b]ecause fiduciaries of business entities must take risks and make difficult decisions about what is material to disclose, they are exposed to liability for breach of fiduciary

---

[20] The Complaint also predicates liability on the failure to disclose the secret succession plan. However even if the plan existed, which it did not, the only reason the secret succession plan was supposedly needed was because the Board apparently intended to force Pedersen out because of the margin account. So, even that part of the Complaint is rooted in the stock pledges.

duty only if their breach of the duty of care is extreme." *Metro Commun. Corp. BVI v. Adv. Mobilecomm Technologies Inc.*, 854 A.2d 121, 157 (Del. Ch. 2004); *see also Zirn v. VLI Corp.*, 681 A.2d 1050, 1062 (Del.1996) ("A good faith erroneous judgment as to the proper scope or content of required disclosure implicates the duty of care rather than the duty of loyalty. Thus, the disclosure violations at issue here fall within the ambit of the protection of section 102(b)(7).") Especially where Plaintiffs cannot clearly articulate a pecuniary motive to purposely engage in this scheme to lie and cover up[21], they have failed to plausibility allege anything more than a good-faith misunderstanding of the disclosure requirements and in any event have failed to meet the plausibility standard required by the Supreme Court in *Twombly* and *Iqbal*.  The Court should therefore dismiss Count II.

### C.      Plaintiffs Fail to State a Claim for Waste of Corporate Assets.

"'The essence of a claim of waste of corporate assets is the diversion of corporate assets for improper or unnecessary purposes.'"[22] *Taylor v. Kissner,* 893 F. Supp. 2d 659, 673 (D. Del. 2012) (quoting *Michelson v. Duncan,* 407 A.2d 211, 217 (Del.1979)). "A claim of waste requires the pleading of <u>particularized facts</u> demonstrating that 'the consideration received by the corporation was so inadequate that no person of ordinary sound business judgment would deem it worth that which the corporation paid.'" *Id.* (Emphasis added) (citation omitted).  "Corporate waste is 'confined to unconscionable cases where directors irrationally squander or give away corporate assets.'" *Id.* (Citation omitted).

---

[21] Plaintiffs appear to allege that fear of being voted out of office were Pedersen's pledges to have been disclosed in the Proxy Statement was the motive for the failure to disclose. This makes no sense. Pedersen had already disclosed that he had to sell stock to meet a margin call in a publicly filed Form 144 in December 2011. (RJN, Ex. G.)  It is simply not plausible that they feared being voted out of office for disclosing what had already been effectively disclosed.

[22] Pedersen is unable to locate any Nevada law defining or analyzing a claim for waste of corporate assets.  As indicated, in such circumstances, Nevada follows Delaware corporate law. *Brown,* 531 F. Supp. 2d at 1245.

Plaintiffs make no effort to meet these requirements.  Their "corporate waste" claim consists, in its entirety, of two substantive paragraphs in which Plaintiffs vaguely assert the individual Defendants, including Pedersen, "wasted" corporate assets by paying themselves compensation  that was "unearned" as  "a result of the misconduct described above, and by failing to properly consider the interests of the Company and its shareholders."  (Compl. ¶¶ 193-194.)  However, even assuming as true the conclusory assertion that the individual Defendants would not have been elected but for the alleged fraud, this does not prove that the money they were paid was wasted.  Plaintiffs fail to take into account the services each individual Defendant performed for Zagg.

In any event, Plaintiffs' conclusory assertions do not need to be accepted as true and can be disregarded.  Plaintiffs failed to provide the requisite "particularized facts" to show that the individual Defendant directors "irrationally squander[ed]" corporate assets by compensating Pedersen and themselves for unearned or grossly inadequate services.  As such, Plaintiffs have failed to plead a plausible claim for waste of corporate assets.

Even if Plaintiffs had provided additional factual support, this claim would still fail as a matter of law.  In *Taylor,* the court dismissed an identical claim as "completely unprecedented":

> Taylor's [shareholder] theory is that paying the salaries and standard fees of officers and directors who commit breaches of fiduciary duty constitutes waste. The claim is completely unprecedented under Delaware law. Unsurprisingly, Taylor cites no case law that offers any support for this theory. Because Taylor has failed to allege with particularity any unconscionable behavior committed by Defendants or that they caused Harris Stratex [the Company] to squander assets that no person of sound business judgment would allow, the claims are not properly pleaded.

*Id.*  Moreover, any portion of this claim that is based on the payment of compensation after Pedersen resigned, or the Consulting Agreement given to Pedersen in connection with his resignation, cannot state a claim against Pedersen since he no longer had any control over the

corporation's actions.  Accordingly, this claim should be dismissed.

> **D.    Plaintiffs Fail to State a Claim for Unjust Enrichment.**

Plaintiffs have also failed to provide sufficient facts to plead a plausible claim for unjust

enrichment.  "Unjust enrichment is the unjust retention of a benefit to the loss of another, or the

retention of money or property of another against the fundamental principles of justice or equity

and good conscience."  *Topaz Mut. Co., Inc. v. Marsh*, 839 P.2d 606, 613 (Nev. 1992).  The

elements of unjust enrichment include "(1) a benefit conferred on the defendant by the plaintiff;

(2) appreciation of the benefit by the defendant; and (3) acceptance and retention of the benefit

by the defendant (4) in circumstances where it would be inequitable to retain the benefit without

payment."  *Kennedy v. Carriage Cemetery Srvcs., Inc.,* 727 F.Supp.2d 925, 932 (D. Nev. 2010)

(citing *Leasepartners Corp. v. Robert L. Brooks Trust,* 942 P.2d 182, 187 (Nev. 1997)).

Plaintiffs make no effort to conform their unjust enrichment claim to the requirements of

Nevada law.  Plaintiffs' unjust enrichment claim is entirely based upon their claim for breach of

fiduciary duty.  Specifically, Plaintiffs claim that Pedersen "received bonuses, stock options,

stock appreciation rights, and similar such compensation in ZAGG *in breach of [his] fiduciary

duties* . . .  [and] were unjustly enriched thereby."  (Compl. ¶186 (emphasis added).)  Plaintiffs

further contend Pedersen was unjustly enriched by the Consulting Agreement. (*Id.* at ¶188.)

Such allegations do not state a claim for unjust enrichment.  Plaintiffs have not alleged

the compensation was unearned, unless Plaintiffs are suggesting that, as a matter of law, any

officer or director found to have breached any duty is not entitled to any compensation for

services actually performed.[23]  Pedersen is unaware of any authority recognizing such a theory.  .

In addition, under Nevada law, "[u]njust enrichment is an equitable substitute for a

---

[23]  To the extent Plaintiffs' claim the compensation earned and received should be offset by any
damages caused by Pedersen's alleged breaches of fiduciary duty, this is a different claim.

contract, and an action for unjust enrichment therefore cannot lie where there is an express written agreement." *Kennedy,* 727 F.Supp.2d at 932. Plaintiffs have not alleged Pedersen lacked a contract with ZAGG. To the contrary, Plaintiffs expressly base their unjust enrichment claim against Pedersen, in part, upon the written Consulting Agreement.

Moreover, because Plaintiffs have wholly tied their unjust enrichment claim to their claim for breach of fiduciary duty, Plaintiffs' claim for unjust enrichment fails to the extent this claim fails. Absent a breach of fiduciary duty, Plaintiffs have pled no facts to demonstrate the compensation received was "unjust."

Finally, as set forth above, Plaintiffs have not established, much less addressed, why making a board demand for this claim would be futile, precluding it as a matter of law. Accordingly, Plaintiffs' unjust enrichment claim should be dismissed for failure to state a claim.

## CONCLUSION

For the foregoing reasons, the Derivative Complaint should be dismissed in its entirety, with prejudice, for failure to make a valid board demand and for failure to state a claim.

DATED this 4th day of April, 2014.

CLYDE SNOW & SESSIONS


_____/S/ BRENT R. BAKER_____
Brent R. Baker
D. Loren Washburn
Jennifer A. James

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 4th day of April, 2014, I electronically filed the foregoing **DEFENDANT ROBERT G. PEDERSEN'S MOTION TO DISMISS PLAINTIFFS' VERIFIED CONSOLIDATED SHAREHOLDER DERIVATIVE COMPLAINT** with the Clerk of the Court and notification of such filing was sent to the following:

Artemis D. Vamianakis     avamianakis@fabianlaw.com

Beth A. Keller     bkeller@faruqilaw.com,

Bradford M. Liddell     brad-liddell@rbmn.com

Bryan J. Ketroser     bketroser@wsgr.com

David J. Berger     dberger@wsgr.com

David W. Scofield     dws@psplawyers.com

Francis A. Bottini , Jr     fbottini@bottinilaw.com

Kevin N. Anderson     kanderson@fabianlaw.com

Ligaya T. Hernandez     lhernandez@faruqilaw.com

Michael J. Hynes     mhynes@faruqilaw.com

Nessia S. Kushner     nkushner@wsgr.com

Russell C. Fericks     russell-fericks@rbmn.com

Steven M. Schatz     sschatz@wsgr.com

Zachary E. Peterson     zachary-peterson@rbmn.com


/s/ Michelle Carter