IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| IN RE: ZAGG INC. SHAREHOLDER DERIVATIVE ACTION | MEMORANDUM DECISION AND ORDER |
| This document relates to: All Actions | Case No. 2:12cv1188 Judge Dee Benson |

Presently before the court is Lead Plaintiffs Albert Pikk's and Daniel L. Rosenberg's

Verified Consolidated Shareholder Derivative Complaint on behalf of ZAGG Inc. against

Individual Defendants Robert G. Pedersen II, Randall Hales, Brandon T. O'Brien, Cheryl L.

Larabee, Edward D. Eckstrom, and Shuichiro Ueyama (collectively, "Individual Defendants")

for violation of § 14(a) of the Securities Exhange Act of 1934, breaches of fiduciary duties,

unjust enrichment, waste of corporate assets, and insider trading. (Dkt. No. 43.)

On April 4, 2014, Defendant Robert G. Pedersen ("Pedersen") filed a Motion to Dismiss

pursuant to 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt No. 53.) On April 7, 2014,

Nominal Defendant ZAGG Inc. and Individual Moving Defendants also filed a Motion to

Dismiss pursuant to 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 49.) After

briefing by the parties, the Court heard oral argument on the motions. Having considered the

memoranda submitted by the parties, the relevant law, and the arguments of counsel, the court

1

enters the following Memorandum Decision and Order.

## BACKGROUND

In deciding whether to dismiss a shareholder derivative complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court presumes the truth of all well-pleaded facts in the complaint. *Tal v. Hogan*, 453 F.3d 1244, 1252 (2006), *cert denied*, U.S. 1209 (2007). In addition, the Court may consider "other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, LTD.*, 551 U.S. 308, 322 (2007). With this in mind, the court considers the facts and allegations in this case.

At the outset, the Court notes that the Moving Defendants and Pedersen have each filed unopposed requests for judicial notice of various publicly-available documents, including ZAGG press releases, forms filed with the SEC, transcripts of earnings conference calls, and a Google Finance chart showing opening and closing stock prices of ZAGG common stock from October 15, 2010 through August 17, 2012. (Dkt. Nos. 57, 60.) The Court takes judicial notice of these documents pursuant to Federal Rule of Evidence 201(b)(2).[1] *See id.; GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997). With this in mind, the Court considers the facts and allegations in this case.

Corporate defendant ZAGG is a Nevada corporation with its principal executive offices in Salt Lake City, Utah. (Am. Compl. ¶ 2.) ZAGG designs, manufactures and distributes protective coverings, audio accessories and power solutions for consumer electronic and hand-

---

[1] Citations to judicially noticed documents are labeled as either Pedersen's RJN Ex. _, or Moving Defendants' RJN Ex. _.

held devices. (Am. Compl. ¶ 22.) Defendant Robert G. Pedersen was the co-founder of ZAGG and its Chief Executive Officer and Chairman of the Board of Directors until August 2012. (Am. Compl. ¶ 23.) The six individual defendants, Robert G. Pedersen, Randall Hales, Brandon T. O'Brien, Edward D. Ekstrom, Shuichiro Ueyama, and Cheryl A. Larabee, were all officers or directors of ZAGG during the Class Period.[2] (Am. Compl. ¶ 24-28.) Ueyama has been dismissed from this action based on Plaintiff's failure to effectuate timely service. (Dkt. No. 71.)

On December 12, 2011, the Company announced the appointment of Mr. Hales as ZAGG's President and Chief Operating Officer. (Am. Compl. ¶ 82.)[3] The December 12, 2011, press release stated that Mr. Hales had "become familiar with the day-to-day operations of ZAGG," and described his new role as "overseeing operations and customer service at ZAGG." (*Id.*; Ex. 1.)[4]

On December 21, 2011, Mr. Pedersen sold 345,000 shares of ZAGG common stock as a result of a margin call. (Am. Compl. ¶ 5; Ex. 5.) Mr. Pedersen filed a Form 4 on December 23, 2011, disclosing his December 21, 2011, sale. The Form 4 stated that the sales were made to meet an "immediate financial obligation." (Am. Compl. ¶ 74-75; Ex. 5.)

On March 15, 2012, the Company filed its FY11 Form 10-K (Am. Compl. ¶ 99.) On April 27, 2012 the Company filed a proxy statement soliciting votes for, *inter alia*, re-election of the Company's five directors, including Mr. Pedersen. The 2012 Proxy did not address whether

---

[2] Hales was President, Chief Operating Officer and Director of ZAGG, and on August 17, 2012, he was appointed as Interim Chief Executive Officer. O'Brien was the Chief Financial Officer of ZAGG. Ekstrom was a Director of ZAGG. Larabee was a Director of ZAGG, and on August 17, 2012, she was appointed as Chairman of the Board of Directors.

[3] Mr. Hales has also served as a ZAGG director since October 2010. (Am. Compl. ¶ 24.)

[4] Exhibits ("Ex.__") are attached to the Declaration of Nessia S. Kushner is Support of Nominal Defendant ZAGG Inc. and Individual Moving Defendants' Motion to Dismiss the Verified Consolidated Shareholder Derivative Complaint.

any of Mr. Pedersen's shares were pledged as security. (Am. Compl. ¶¶ 8, 89, 100.) On August 14, 2012, and August 24, 2012, Mr. Pedersen sold 515,000 and 1,250,061 shares, respectively, as a result of margin calls. (Am. Compl. ¶¶ 11, 76, 117.) Mr. Pedersen filed Forms 4 disclosing these sales and the fact that they were "to meet margin calls." (Am. Compl. ¶ 76.) Mr. Pedersen's August 28, 2012, Form 4 stated that the August 24, 2012 sales "satisf[ied] all margin obligations." (Am. Compl. ¶ 76; Ex. 6.)

After selling his stock to meet margin calls, on August 17, 2012, Mr. Pedersen was forced to resign as CEO of ZAGG and Chairman of the ZAGG Board. (Am. Compl. ¶¶ 11, 23, 85, 110.) The Company entered into a consulting agreement with Mr. Pedersen, pursuant to which Mr. Pedersen received $910,000. In return, Mr. Pedersen agreed to provide "services related to current and historical finances and operations; relationships with suppliers, customers, and vendors; product development; marketing and distibution; representation of the Registrant at public appearances; and participation in the Registrant's meetings as an independent contractor on projects and matters as requested by the Chairperson of the Board of Registrant." (Ex. 8 at 3.)

Also on August 17, 2012, Mr. Hales was appointed interim CEO. (Am. Compl. ¶ 24.) The company held a conference call on August 28, 2012, during which Mr. Hales explained that Mr. Pedersen's departure was due to the margin call situation. (Am. Compl. ¶¶ 13, 86, 120.) The Company also implemented a policy preventing officers, directors and 10% shareholders from holding securities in margin accounts or engaging in hedging or other similar transactions using shares of the Company. (Am. Compl. ¶¶ 47, 112; Ex. 7.)

Later in 2012, multiple law suits were filed both in the form of class action lawsuits by

4

shareholders and in the form of derivative lawsuits that purported to represent ZAGG in asserting claims against its current and former board members. The class action lawsuits were consolidated into a single class action lawsuit, *Apple, et al v. ZAGG, Inc. et al*, Case No. 2:12-cv-00852 (the "Class Action"), which has already been dismissed by this court. The derivative actions were consolidated into the present Derivative Action.

Plaintiffs purport to bring this derivative action on behalf of ZAGG. Plaintiffs allege that certain ZAGG officers and directors are liable for causing the Company to issue statements that were misleading because they omitted: (1) the CEO's margin account and (2) a supposed "secret succession plan." The Complaint asserts a Section 14(a) claim as well.

## LEGAL REQUIREMENTS

In deciding a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court presumes the truth of all well-pleaded facts in the complaint, but need not consider conclusory allegations. *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006), *cert. denied*, 549 U.S. 1209 (2007). The Court is not bound by a complaint's legal conclusions, deductions and opinions couched as facts. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Further, though all reasonable inferences must be drawn in the non-moving party's favor, a complaint will only survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

### I. Demand Futility

5

Demand futility must be pleaded with particularity. A fundamental policy underlying Nevada corporate law is that "a corporation's 'board of directors has full control over the affairs of the corporation.'" *Shoen v. SAC Holding Corp.*, 137 P.3d 1171, 1178 (Nev. 2006) (quoting Nev. Rev. Stat. § 78.120(1)). This includes the power to decide whether the company should engage in litigation. *Shoen*, 137 P.3d at 1179. Derivative actions, in which shareholders purport to bring suit in the name of a company, provide an unusual and narrow exception to this rule. *See Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).[5]

Shareholders seeking to enforce a corporation's rights must first demand action from the board of directors or plead with particularity the reasons why such a demand would have been futile. *Aronson*, 473 A.2d at 808; *see also* Fed. R. Civ. P. 23.1 (demand futility must be pleaded "with particularity"). The demand requirement is "a rule of substantive right designed to give a corporation the opportunity to rectify an alleged wrong without litigation, and to control any litigation which does arise." *Aronson*, 473 A.2d at 809.

Plaintiffs concede that they "did not make a demand on the Board to bring this action[.]" (Am. Compl. ¶ 138.) It follows that before Plaintiffs can represent the interests of the Company, they must "allege with particularity . . . the reasons for [their] failure to obtain the action or for not making the effort." *Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 367 & n.9

---

[5] Because ZAGG is a Nevada corporation, Nevada's substantive law governs the demand analysis required in derivative cases like this one. *See Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 108-09 (1991). However, "Nevada courts look to Delaware law for guidance on issues of corporate law." *In re Computer Sciences Corp. Deriv. Litig.*, No. CV 06-05288 NRP (Ex), 2007 WL 1321715, at *4 (C.D. Cal. Mar. 26, 2007). In fact, the Nevada Supreme Court has adopted the standards articulated by the courts of Delaware concerning the circumstances under which demand is excused. *See Shoen*, 137 P.3d at 1184.

(Del. 2006) (citations omitted).

### A. The *Aronson* and *Rales* Tests

If a plaintiff challenges an affirmative board decision, then under *Aronson*, demand is excused only if the plaintiff pleads particularized facts creating a reasonable doubt that (1) a majority of the directors are disinterested and independent, or (2) the transaction was the product of a valid exercise of business judgment. *Aronson*, 473 A.2d at 814. If a plaintiff challenges something other than a board action, such as a failure to act or actions by individual directors, then the second part of the *Aronson* test drops out and, under *Rales*, the test becomes whether the plaintiff pleads particularized facts that "create a reasonable doubt that . . . the board . . . could have properly exercised its independent and disinterested business judgment in responding to a demand." *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993). Because the only claims in the Complaint addressing affirmative decisions by the ZAGG Board are the ones challenging compensation decisions, *Aronson* applies to those claims, and *Rales* applies to the rest.

Disinterestedness and independence are presumed at the pleading stage. *See baum ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1048-50 (Del. 2004). To plead a disqualifying interest, a plaintiff must offer particularized facts demonstrating that a director "will receive a personal financial benefit from a transaction that is not equally shared by the stockholders," or that "a corporate decision will have a materially detrimental impact on a director, but not the corporation and the stockholders." *Rales*, 634 A.3d at 936. To plead a lack of independence, a plaintiff must "show that the directors are 'beholden' to [an interested director] or so under the influence that their discretion would be sterilized." *Id.*

### B. Pleading Facts to Show a "Substantial Likelihood of Liability

7

The "mere threat" of liability is insufficient to raise a reasonable doubt as to a director's disinterestedness. *Aronson*, 473 A.2d at 815. Rather a plaintiff must show "such egregious conduct . . . that they face a substantial likelihood of liability." *Seminaris v. Landa*, 662 A.2d 1350, 1355 (Del. Ch. 1995). The standard to state a cause of action for breach of fiduciary duty is gross negligence. *See e.g., Stone*, 911 A.2d at 369. "[O]rdinary negligence is insufficient[.]" *In re Walt Disney Co. Deriv. Litig.*, 907 A.2d 693, 760 (Del. Ch. 2005).

In this case the burden is even higher because the corporation has adopted an "exculpatory provision" in its articles of incorporation.[6] ZAGG's articles of incorporation provide: "To the fullest extent permitted by the laws of the State of Nevada . . . no director or officer of the Corporation shall be liable to the Corporation or to its stockholders for damages for breach of fiduciary duty as a director or officer." (Ex 3 at 48.) In light of this provision, "plaintiffs cannot sustain their complaint even by pleading facts supporting an inference of gross negligence; they must plead a non-exculpated claim." *In re Lear Corp. S'holder Litig.*, 967 A.2d 640, 648 (Del. Ch. 2008). Plaintiffs must plead particularized facts which show "an actual intent to do harm" or "conscious disregard for [the Individual Defendants] responsibilities." *In re Walt Disney Co. Deriv. Litig.* 906 A.2d 27, 62-64 (Del. 2006). In other words, just as this court required in the Securities Action, Plaintiffs are required to plead "particularized facts demonstrating that the [Individual Defendants] acted with scienter." *Wood*, 953 A.2d at 141.

---

[6]*See* Nev. Rev. Stat. § 78.138(7)(b) ("Except as otherwise provided . . . or unless the articles of incorporation . . . provide for greater individual liability, a director or officer is not individually liable to the corporation . . . for any damages as a result of any act or failure to act in his or her capacity as a director or officer unless it is proven that . . . [t]he breach of those duties involved intentional misconduct, fraud, or a knowing violation of the law.").

## II. Whether Plaintiffs Have Plead Particularized Facts Raising a Reasonable Doubt as to Any Directors Disinterestedness

When this lawsuit was filed the Board consisted of six directors: Mr. Heiner, Mr. Holiday, Mr. Maurer, Mr. Ekstrom, Mr. Hales, and Ms. Larabee.  Thus, Plaintiffs must plead particularized facts raising a reasonable doubt as to the disinterestedness or independence of at least three of the six Board Members.[7]  However, because the allegations are inadequate as to Ms. Larabee, an outside director who joined the ZAGG Board after the events alleged in the "Background Allegations" and who is not alleged to have had prior business ties with Pedersen, the court need not go any further.  In any event, as demonstrated below, the Complaint fails to mount a sufficient challenge to any of the directors.

A. No Director Faces a Substantial Likelihood of Liability for SEC Filings

Plaintiffs' main demand futility argument is that Ms. Larabee, Mr. Ekstrom, and Mr. Hales face substantial liability because they "reviewed, approved, and signed" the Company's March 15, 2012, Form 10-K and the April 27, 2012 Proxy. (Am. Compl. ¶ 154.)  But "execution of . . . financial reports, without more, is insufficient to create an inference that the directors had actual or constructive notice of any illegality." *Wood*, 953 A.2d at 142; *see also Kaplan v. Wyatt*, 499 A.2d 1184, 1189 (Del. 1985) ("The mere fact that a director was on the Board at the time of the acts alleged in the complaint does not make that director interested or dependent[.]").  Rather, Plaintiffs must plead particularized facts demonstrating "intentional misconduct, fraud, or a knowing violation of the law." Nev. Rev. Stat. § 78.138(7)(b).  Plaintiffs' conclusory and generic allegations do not provide the requisite particularized facts showing knowledge of both

---

[7] Where the board consists of an even number of directors, a plaintiff must raise a reasonable doubt as to at least half of the directors. *See e.g.*, *Beam*, 845 A.2d at 1046 & n.8.

the status of Mr. Pedersen's pledges at the relevant times and the requirement to disclose the alleged omission.

The court has previously analyzed allegations that ZAGG directors signed intentionally misleading SEC filings in the Securities Action. In the Securities Action Plaintiffs asserted that Ms. Larabee, Mr. Ekstrom, and Mr. Hales, the three directors alleged in this case to face a "substantial likelihood of liability," were liable under Sections 10(b) and 14(a) of the Exchange Act for signing the Company's March 15, 2012 Form 10-K and its April 27, 2012 Proxy. (Securities Action Complaint ¶¶ 1, 8, 57-58. This court disagreed with Plaintiffs in the Securities Action and for those same reasons disagrees with Plaintiffs in this case. (*See* Securities Order.)

### 1. Plaintiffs' Scienter Allegations

#### (a)  Knowledge of Mr. Pedersen's Margin Account

Plaintiffs assert that Ms. Larabee, Mr. Ekstrom, and Mr. Hales had knowledge of Pedersen's margin accounts at the relevant time. However, Plaintiffs provide no particularized facts sufficient to demonstrate that Ms. Larabee, Mr. Ekstrom, or Mr. Hales knew about, let alone intentionally failed to disclose, Mr. Pedersen's margin account when they signed the SEC filings in question. Instead, Plaintiffs rely on conclusory assertions. (*See e.g.* ¶ 92) ("Despite actual knowlege of Defendant Pedersen's pledges . . . ."), (¶ 94) ("Although the Board had knowledge of Pedersen's Pledges . . . ."). Such conclusory assertions, without facts indicating how and when each director gained knowledge of the status of Mr. Pedersen's margin account, are not sufficient. Contrary to Plaintiffs' assertions, just because the Individual Defendants knew that Mr. Pedersen had a margin call in December 2011, does not automatically mean that

they knew he still had more ZAGG shares in a margin account more than four months later when the Proxy was filed.

As this court wrote in dismissing the Securities action:

> There are no allegations of any memoranda, e-mails, or other written documentation to suggest that the Moving Defendants knew about the stock pledging prior to each margin call. There are no allegations as to any statements made by any Moving Defendant that could suggest that such Defendant knew about the stock pledging. The allegations are simply insufficient to suggest that the Moving Defendants knew about the stock pledging prior to each margin call.

Securities Order at 11. Like the Securities Action, the Complaint alleges no contemporaneous documentation or other evidence to indicate knowledge at the relevant time.

In addition to showing that the Individual Defendants knew the status of Mr. Pedersen's margin account, Plaintiffs also must plead particularized facts showing they knew its omission from the 2012 Proxy would mislead investors. *See e.g., Wood*, 953 A.2d at 142 ("[T]he Complaint alleges many violations of federal securities and tax laws but does not plead with particularity . . . defendants knew that such conduct was illegal."). In this regard, the Complaint fails. There are virtually no such allegations in the Complaint.

### (b) The "Secret Succession Plan"

Plaintiffs also allege liability for omission of a "secret succession plan." (*See e.g.,* ¶¶ 6-7, 152.) However, the Complaint fails to allege the existence, much less the knowledge, of such a plan. *See e.g., Grobow v. Perot*, 539 A.2d 180, 187 (Del. 1988) (assertions "not supported by allegations of specific fact may not be taken as true"), *overruled in part on other grounds by Brehm*, 746 A.2d at 244.

This court has already determined that Plaintiffs' theory rests on a tripod with three bad legs. Plaintiffs argue: (1) Mr. Hales was hired on December 12, 2011, to run the "day-to-day

11

operations of ZAGG" (¶ 82), (2) Mr. Hales became interim CEO when Mr. Pedersen resigned (¶ 111), and (3) Mr. Hales stated on August 28, 2012, that "Pedersen's departure 'was entirely related to the margin call situation.'"(¶ 86.)  But there could not have been a "secret succession plan" to replace Mr. Pedersen created by Mr. Pedersen's margin call if Mr. Hales was hired nine days before Mr. Pedersen's December 21, 2011 margin call. (*Compare* ¶ 82) (Mr. Hales hired on December 12, 2011) *with* ¶ 5 (Mr. Pedersen's first forced sale occurred on December 21, 2011.) The Complaint portrays Mr. Hales' running the "day-to-day operations" of ZAGG as some sort of August 2012 surprise (¶ 120), but not only were these responsibilities disclosed in both the December 12, 2011 press release (¶ 82; Ex. 1) and the February 27, 2012 earnings call (¶¶ 6, 84; Ex. 2 at 2), they are precisely the responsibilities one would expect for a Chief *Operating* Officer.  And the mere fact that Mr. Hales succeeded Mr. Pedersen does not mean there was a pre-existing plan that he would do so.

To show a "substantial likelihood of liability," Plaintiffs must plead particularized facts demonstrating that the directors acted with "an actual intent to do harm" or "conscious disregard for [their] responsibilities," i.e., scienter, in signing the SEC filings at issue. *Walt Disney*, 906 A.2d at 62-64.  Plaintiffs have failed to do so.

## CONCLUSION

Plaintiffs cannot show the lack of independence of Mr. Hales, Mr. Ekstrom, and especially Ms. Larabee.  Plaintiffs have not plead facts showing that it is plausible that the Individual Defendants: (1) knew Pedersen still had margin pledges after December 2011, or (2) knew about (or that there even was) a secret succession plan.  The pleading standard has not been satisfied.  For the same reasons, the Court also finds an insufficient pleading as to the

substantive claims, which are very similar to the Securities Order in the earlier case.

Accordingly, both motions to dismiss are **GRANTED**.

Dated this 1st day of October, 2014.


Dee Benson
United States District Judge